UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

Carol Commissiong

                                   Plaintiff,

                - against -

US Dept Housing & Urban
Development, Jay Golden
JoAnn Frey, Tong-chi Yeh   Defendant.
------------------------------------------------x

1:19 Civ. 08390 (VSB)

**ORDER TO SHOW CAUSE
FOR PRELIMINARY INJUNCTION
AND TEMPORARY RESTRAINING
ORDER**

FILED 10-10-19

Upon the affidavits of   Carol Commissiong   , sworn to

the 10th day of October , 2019 and upon the copy of the complaint hereto annexed, it is

ORDERED, that the above named defendant show cause before a motion term of

this Court, at Room _____, United States Courthouse, 500 Pearl Street, in the City, County and

State of New York, on _____ ___, _____, at _____ o'clock in the _____noon

thereof, or as soon thereafter as counsel may be heard, why an order should not be issued

pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the defendant during the

pendency of this action from _____

_____

_____

_____; and it is further

ORDERED that, sufficient reason having been shown therefor, pending the

hearing of plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P.,

the defendant is temporarily restrained and enjoined from _____

_____

_____

_____

_____; and it is further

      ORDERED that security in the amount of $_____ be posted by the

plaintiff prior to _____ ____, _____, at _____ o'clock in the _____noon of that

day; and it is further

      ORDERED that personal service of a copy of this order and annexed affidavit

upon the defendant or his counsel on or before _____ o'clock in the _____noon, _____

_____ ____, _____, shall be deemed good and sufficient service thereof.


DATED:   New York, New York

ISSUED:   _____M


                     _____

                           United States District Judge

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CAROL COMMISSIONG,

                          Petitioner,

          -against-

U.S. DEPT. HOUSING & URBAN
DEVELOPMENT, JAY GOLDEN, JO-ANN
FREY and TANG-CHI YEH.

                          Respondents.

**NOTIFICATION OF REMOVAL**

Index No. 101204/2019

          PLEASE TAKE NOTICE that a notice of removal, a copy of which is annexed hereto,

removing the above-captioned action, which is pending in the Supreme Court of the State of

New York, County of New York, to the United States District Court for the Southern District of

New York, was filed on September 10, 2019, with the Clerk of said District Court pursuant to the

provisions of 42 U.S.C. § 1442(a)(1).

Dated:   New York, New York
         September 10, 2019

FILED
SEP 11 2019
NEW YORK COUNTY
COUNTY CLERK

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

*Attorney for the Federal Defendants*

By:   *B Cowart*

BRANDON H. COWART
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2693
Facsimile: (212) 637-2686
E-mail: brandon.cowart@usdoj.gov

Exhibit "A"
Notice of Removal

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By: BRANDON H. COWART
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2693
Facsimile: (212) 637-2686
E-mail: brandon.cowart@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROL COMMISSIONG,

                                              Petitioner,

            -against-

U.S. DEPT. HOUSING & URBAN
DEVELOPMENT, JAY GOLDEN, JO-ANN
FREY and TANG-CHI YEH.

                                              Respondents.

---

**NOTICE OF REMOVAL**

from the Supreme Court of the State of
New York, County of New York, Index
No. 101204/2019

---

        Defendants United States Department of Housing and Urban Development ("HUD") and

HUD employees Jay Golden, Jo-Ann Frey, and Tang-Chi Yeh (together, the "Federal

Respondents"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern

District of New York, hereby remove the above-captioned action to the United States District

Court for the Southern District of New York. The grounds for removal are as follows.

        1.      The Federal Respondents are named as respondents in an action filed in the

Supreme Court of the State of New York, County of New York, by the filing of a Verified

Petition, Index No. 101204/2019, on August 5, 2019 (the "Petition"). A copy of the Petition is

attached hereto as Exhibit A. The state court action arises in connection with the Federal

Respondents' enforcement of the Fair Housing Act, 42 U.S.C. 3601, et seq.

2.      On February 26, 2018, Petitioner Carol Commissiong ("Commissiong") filed an administrative complaint (the "FHEO Complaint") with HUD's Office of Fair Housing and Equal Opportunity ("FHEO"), a department within HUD which enforces the Fair Housing Act 42 U.S.C. § 3601, et seq. Commissiong named as respondents to the FHEO Complaint persons and entities allegedly involved in the ownership or management of her rental apartment (the "FHEO Complaint Respondents"). Ex. A at 6-7. In the FHEO Complaint, she alleged that the FHEO Complaint Respondents refused to renew her lease, overbilled and added excessive charges to her rent, turned off her utilities, and refused to make repairs to her apartment, all in an effort to force her to vacate her apartment. Ex. A at 6. Commissiong alleged that the FHEO Complaint Respondents took these actions based on her sex, race and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b). *Id.*

3.      FHEO staff working from HUD's New York regional office investigated the FHEO Complaint. On May 15, 2019, FHEO issued a decision finding no reasonable cause to believe that a discriminatory housing practice had occurred. Ex. A at 4-20. Dissatisfied with FHEO's finding, Commissiong filed a Verified Petition (the "Petition") pursuant to Article 78 of the New York Civil Practice Laws and Rules. *See* CPLR § 7801. (Article 78 provides a procedural vehicle whereby an aggrieved party can obtain review of decisions of state or local agencies and officers. *Id.*) In the Petition, Commissiong seeks to nullify FHEO's finding of no reasonable cause. Commissiong names as respondents HUD and FHEO officials Jay Golden, Jo-Ann Frey, and Tang-Chi Yeh. Ex. A at 1-2.

4.      On August 19, 2019, HUD received a copy of the Petition. lies served 8/12/19

5.      Commissiong purports to challenge acts and conclusions taken by FHEO in connection with the investigation and adjudication of the FHEO Complaint pursuant to 42 U.S.C.

§ 3610(b). Because FHEO is part of HUD, which is an agency of the United States, and this action relates to acts performed under color of such office, this action may be removed to federal court pursuant to 28 U.S.C. § 1442(a)(1).

6.     The Federal Defendants will promptly file a copy of this Notice of Removal with the Clerk of Court, Supreme Court of the State of New York, County of New York.

7.     No previous application for removal of this action has been made.

8.     In accordance with 28 U.S.C. § 1446(d), the filing of a copy of this notice with the Clerk of Court, Supreme Court of the State of New York, County of New York, shall effect the removal and the state court shall proceed no further unless and until the case is remanded.

Dated:   New York, New York
         September 10, 2019

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Attorney for the Federal Defendants*

By:   /s/ Brandon Cowart
      BRANDON H. COWART
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Telephone: (212) 637-2693
      Facsimile: (212) 637-2686
      E-mail: brandon.cowart@usdoj.gov

3

-------------------------------------------------x

**Carol Commissiong**

[fill in name(s)]                    Plaintiff(s)

Index Number

**101204/19**

- against -

**US Dept Housing Urban Development**

[fill in name(s)]                    Defendant(s)

**AFFIDAVIT OF SERVICE AFTER COMMENCEMENT OF LITIGATION**

-------------------------------------------------x

STATE OF NEW YORK  **New York**
COUNTY OF _____ ) ss:

I, [name of person who served papers] **Rakesh Shah**, being
duly sworn, depose and say:  I am over 18 years of age and am not a party to this case.

I reside at [your address] **48-29 38th St L.I.C NJ 11101**
On **August 12**, 20**19**, [date of service], at [time of day] **2:58** AM/**PM** I served a true

copy of the following papers [identify papers served] **Notice of Petition**
in the following manner. [check box that applies]:

☑ **Personal Service**  By personally delivering the papers to **US Dept Housing & Urban Development** [person served]

at the following location: **26 Federal Plaza Rm# 3532 NYNY 10278** [place of service]

The individual I served had the following characteristics [check one box in each category]

| (Sex) | Height | Weight | Age |
|---|---|---|---|
| (Male) | ☐ Under 5' | ☐ Under 100 lbs. | ☐ 21 - 34 years |
| ☐ Female | ☐ 5'0" - 5'3" | ☐ 100 - 130 lbs. | (35 - 50 years) |
| | ☐ 5'4" - 5'8" | ☐ 131 - 160 lbs. | ☐ 51 - 61 years |
| | (5'9" - 6'0") | (161 - 200 lbs.) | ☐ Over 61 years |
| | ☐ Over 6' | ☐ Over 200 lbs. | |

Color of skin [describe] **Black**    Hair color **Black and gray**
Other identifying features, if any [describe]: _____

☑ **Mail**  By mailing the same in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the addressee(s) indicated below:

☐ **Overnight Delivery**  By depositing the same with an overnight delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery.  The delivery service used was [name of delivery service] _____

[Name(s) and address(es) of person(s) served by mail or overnight delivery]
**Jay Golden, John N Frey, Tang-Chi Yeh**
**US Dept Housing & Urban Development 26 Federal Plaza Rm #3532 NJ NY 10278**

Sworn to before me this
**12th** day of **August**, 20**19**.

_____                    [sign your name before a Notary]
Notary Public

**Rakesh Shah**
[print your name]

PAULA ORTEGA
Notary Public. State of New York
Reg. No. 03OR6355762
Qualified in New York County
Commission Expires March 13, 20**21**.

**Exhibit "B"**
**Affidavit of Service**

Align top of FedEx Express® shipping

FedEx
Express

MON – 16 SEP AA
STANDARD OVERNIGHT

10044
NY-US
JFK

TRK# 8146 9221 0701

E4 AIVA

0215

RT 385   4   15:00
0/01
09:16

F2

Pack®
US Airbill

**1 From**
Date
Sender's Name
Phone

Company

Address

City                                    State                    ZIP

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name
Phone

Company

Address
We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address
Use this line for the HOLD location address or for continuation of your shipping address.

City                                    State                    ZIP

**4 Express Package Service** *To most locations.*

Next Business Day
☐ FedEx First Overnight
☐ FedEx Priority Overnight
☐ FedEx Standard Overnight

2 or 3 Business Days
☐ FedEx 2Day A.M.
☐ FedEx 2Day
☐ FedEx Express Saver

☐ Other

**5 Packaging**
☐ FedEx Envelope*   ☐ FedEx Pak*   ☐ FedEx Box   ☐ FedEx Tube

**6 Special Handling and Delivery Signature Options**
☐ Saturday Delivery
☐ No Signature Required
☐ Direct Signature
☐ Indirect Signature

Does this shipment contain dangerous goods?
☐ No   ☐ Yes   ☐ Yes   ☐ Dry Ice   ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*
☐ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

Total Packages      Total Weight

8146 9221 0701

8146 9221 0701

fedex.com 1.800.GoFedEx 1.800.463.3339

Exhibit "C"
FedEx envelope

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x
In the Matter of the Application of

Carol Commissiong

**[fill in name(s)]**                           Petitioner(s)

- against -

US Dept. Housing & Urban Development
Jay Golden, JoAnn Frey, Tang-Chi Yeh

**[fill in name(s)]**                           Respondent(s)
-------------------------------------------------------------x

Index Number

_101204/2019_

NOTICE OF PETITION

# FILED

AUG 05 2019

COUNTY CLERK'S OFFICE
NEW YORK

PLEASE TAKE NOTICE that upon the verified petition(s) of _____

Carol Commissiong **[your name(s)]**, sworn to on _____, 200__

**[date Verified Petition notarized]**, and the attached exhibits, petitioner(s) will request this Court,
at 9:30 AM on the __9__ day of __September__, 200_9_ **[return date]** at the Courthouse, at
60 Centre Street, New York, N. Y., in the Motion Support Courtroom, Room 130, for a judgment,
pursuant to the Civil Practice Law and Rules (CPLR), granting the following relief to the
petitioner(s): **[briefly describe what you are asking the Court to do]** Carol Commissiong
Filed a complaint with HUD seeking relief and enforcement
of the Fair Housing Act of 1968 but Jay Golden, JoAnn Frey
and Tang-Chi Yeh took bribes and dismissed my case
on 5/17/2009. I seek punitive damages and paid Court & attorney Fe
and for such other and further relief as this Court may deem just and proper.

Dated: _____, 200__

   **[date signed]**

Respectfully submitted,

Carol Commissiong
555 Main St. Apt. #1302
New York  NY  10044
646 279 5988
                    Petitioner(s)

**[your name, address, telephone number]**

To: Respondent(s)
US Dept. Housing & Urban Development
26 Federal Plaza  Room # 3532
New York  NY  10278
Attn: Tang-Chi Yeh

**[name, address, telephone number]**

Exhibit "D" —
Verified Petition
Supreme Court #101204/2019

4-06

# Carol Commissiong

555 Main Street, Apt. 1302 • New York, NY 10044
carolcommissiong@gmail.com • (646) 279-5988

Tang-Chi Yeh
US Dept. Housing & Urban Development
26 Federal Plaza, Room 3532
New York, NY 10278

July 20, 2019

RE: Commissiong, Carol D. vs. Mark Greenberg Real Estate Co. LLC. et al.
         Title VIII No. 02-18-9387-8

Dear Ms. Yeh, Frey, Golden,

I am in receipt of your response to my request to have my complaint HUD Case # 02-18-9387-8 against Mark Greenberg Real Estate Co. LLC et al. seal and exempt from public disclosure. In addition to returning my original lease renewal document for the period October 1, 2018 through September 30, 2019.

I have received in the mail a letter signed by Jay Golden saying that the original lease document is enclosed but in fact it wasn't, the envelope was empty except for a copy of my letter of request and Golden signed response letter **stating a lie.**

I later received a certified letter with copies of documents I didn't request **but I did not receive the requested original lease document.** I don't know what kind of games you people are playing but this is no joke, this is my life you're toying with. I find your tactics unethical. If I don't receive my original lease document back in the mail within 10 days from this date, I will take it as concrete proof that all of HUD staffs involved in this investigation (Jay Golden, Jo-Ann Frey, Tang-Chi Yeh) took bribe form David B. Hirschhorn and Mark Greenberg Real Estate Co. LLC to dismiss my complaint of discrimination of the Fair Housing Act of 1968.

Furthermore, I provided a lot of evidence to make my case but HUD staffs chose to turn a blind eye to all evidence provided in return for a bribe and dismissed my case. However, I affirm that justice will be served and the truth will surface and you'll all pay the consequence of actions.

Moreover, I pointed out the fact that discrimination from management and landlord is being done to other tenants who are <u>females, seniors, black and Hispanic ethnicities.</u> The fact that the discrimination is extended to two gay white men shows how deep the hate crime is with management and <u>David B. Hirschhorn leader of the Klan triggered by pure greed and hate.</u> I also pointed out that mailman Rafael RS responsible for mail fraud and accepting bribery is Hispanic and some MGRE staffs responsible for discrimination, bribery, mail-fraud, coercing, intimidating, threatening and interfering with the enjoyment and privacy of my home are of the same ethnic background as me a black woman.

1

Exhibit "E" ——
Final response letter
to HUD 7/20/19

Case 1:19-cv-08390-VSB   Document 3   Filed 10/10/19   Page 11 of 110
Carol Commissiong vs. US Dept. Housing & Urban Development, Jay Golden, JoAnn Frey, Tang-Chi Yeh
United States District Court Southern District of New York          DOCKET CASE # 1:19-cv-08390

- HUD decision to my Fair Housing Act 1968 violation complaint
- HUD acceptance letter, copy internet complaint and statement
- Letter from HUD requesting data
- Cover letter to HUD with data request response details
- Rent Ledger from March 2008 to April 2019
- Lease agreement cover letter
- Lease agreement
- Lease renewal agreements for 3 years (2013 – 2016)
- Copy of certified letter mailing receipts/return envelope to landlord
- 2014 income validation notice
- 2014 income affidavit
- 2015 income validation notice
- 2015 income validation submit signed receipt MGRE staff John Falvo
- 2016 income validation notice
- Building-Link receipt maintenance repair requests
- HPD 6 open violations
- Housing Court papers showing HPD fines and lean on my resident building
- Proposed HUD Conciliation agreement & emails
- 2017 income ~~validation notice~~ affidavit processed confirmation
- Lease renewal agreement & letter for the period 10/01/18 – 09/30/19
- Letter from MGRE announcing rent increase of  $31.91 (1.5%)
- Letter to HUD  1/5/2019
- Letter from MGRE announcing new property manager Adrian Coyoc
- Letter from MGRE announcing new property manager Richelle Neufville
- Letter from MGRE announcing superintendant Mark Zeltser fired/resign but still a resident & shareholder
- Letter to HUD
- Letter response to HUD's decision and request to seal case and return of lease renewal agreement for the period (10/01/18 – 9/30/19)  letter June 13, 2019
- HUD response letter to my requests  June 12, 2019

- Email to HUD regarding conciliation agreement
- Email from HUD regarding conciliation and government shutdown, copied to management and landlord's attornies



EXHIBIT F



**U.S.  Department of Housing and Urban Development**
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/

Carol D. Commissiong
555 Main St., Apt. 1302
New York, NY 10044

MAY 17 2019

Dear Complainant:

Subject: Housing Discrimination Complaint
Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC, et al.
Inquiry No. 548978
HUD Case No. 02-18-9387-8

The U.S. Department of Housing and Urban Development (HUD) administratively enforces the Fair Housing Act of 1968 (the Act). HUD has completed its investigation of the above-referenced complaint. Efforts to voluntarily conciliate the complaint during the course of the investigation were unsuccessful.

Based on the evidence obtained during the investigation, HUD has determined that no reasonable cause exists to believe that a discriminatory housing practice has occurred. Accordingly, HUD has completed its administrative processing of this complaint under the Act, and the complaint is hereby dismissed. The enclosed Determination of No Reasonable Cause contains a summary of the factual evidence supporting this dismissal.

**Retaliation is a violation of the Fair Housing Act.** Section 818 of the Act makes it unlawful to retaliate against any person because he or she has filed a housing discrimination complaint; is associated with a complainant; has counseled or otherwise assisted any person to file such a complaint; or has provided information to HUD during a complaint investigation. Section 818 also protects complainants against retaliatory acts that occur after a complainant has withdrawn, settled, or conciliated a housing discrimination complaint. Section 818 protects complainants against retaliatory acts that occur after a finding of no reasonable cause. Any person who believes that he or she has been a victim of retaliation for any of the reasons listed above may file a housing discrimination complaint with HUD within one (1) year of the date on which the most recent alleged retaliatory act(s) occurred or ended.

**Right to file a civil lawsuit.** Notwithstanding HUD's dismissal of this complaint, under Section 813(a) of the Act, the complainant may file a civil lawsuit in an appropriate federal district court or state court within two (2) years of the date on which the alleged discriminatory housing practice occurred or ended. The computation of this two-year period does not include the time during which this administrative proceeding

Closure Letter - No cause determination      Exhibit A      Case No. 02-18-9387-8
HUD decision

was pending with HUD. If, upon the application of either party, the court determines that the party is financially unable to bear the costs of the civil lawsuit, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil lawsuit without the payment of fees, costs, or security.

**Public Disclosure.** Section 103.400(a)(2)(ii) of HUD's regulation implementing the Act requires that HUD shall publicly disclose the dismissal of this complaint, unless a complainant or a respondent requests in writing that no such disclosure shall be made. Requests for nondisclosure must be made within thirty (30) days after receipt of this Determination. Nondisclosure requests should be submitted to the same HUD Office that issued the Determination. Notwithstanding such a request, the fact of this dismissal, including the names of all parties to the complaint, is public information and is available upon request.

If you have any questions regarding this closure, please contact Ms. Tang-chi Yeh, Equal Opportunity Specialist, at (542-7522.

Sincerely,

Jay Golden
Region II Director
Office of Fair Housing and Equal Opportunity

Enclosures

Closure Letter - No cause determination

HUD Case No. 02-18-9387-8

## DETERMINATION OF NO REASONABLE CAUSE

**Case Name:** Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.
**Case No.:** 02-18-9387-8

## I.   JURISDICTION

Carol D. Commissiong ("Complainant"), a black Caribbean American female born in
Jamaica, West Indies, filed a complaint with the U.S. Department of Housing and Urban
Development ("HUD" or the "Department"), alleging that Island House Tenants Corp.;
IH Preservation Partners LLC.; David B. Hirschhorn, Vice-President of Island House
Tenants Corp. and Manager of IH Preservation Partners LLC.; Mark Greenberg Real
Estate Co. LLC. and its employees Richelle Neufville-Property Manager, Alicia Pais-
Assistant Property Manager, Steven Greenbaum-Director Property Manager, Taj
Jackson-Controller, Kim Clark-Accountant and Mark Zeltser-Superintendent
(collectively "Respondents") violated the Fair Housing Act, as amended, 42 U.S.C. §
3601 *et seq.* (the "Act") by discriminating against her on the bases of her sex, race, and
national origin.

Specifically, Complainant alleges that Respondents (1) refused to renew her lease; (2)
overbilled and added excessive charges to her rent; (3) turned off her utilities; (4)
provided no hot water; and (5) refused to make repairs to her apartment, in an effort to
have her leave her unit.

The most recent act of discrimination is alleged to have occurred on January 19, 2018,
and, therefore, the complaint was timely filed on February 26, 2018.  Complainant raises
claims that are both timely filed under 42 U.S.C. § 3610(a)(1)(A)(i), as well as untimely
claims.  If proven, the timely allegations would constitute violations of Sections 804 (b)
and 818 of the Act.

Section 804(b) of the Act makes it unlawful to "discriminate against any person in the
terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of
services or facilities in connection therewith, because of race, color, religion, sex, familial
status or national origin."  Section 818 of the Act makes it unlawful to coerce, intimidate,
threaten, or interfere with any person in the exercise or enjoyment of any right granted or
protected by sections 803, 804, 805 or 806 of the Act.

Island House Tenant Corp. ("Island House") is a three-building residential cooperative
complex on Roosevelt Island in Manhattan. Island House leases the land.

IH Preservation Partners LLC ("IH Preservation") owns the shares appurtenant to
Apartment 1302 within Building 555 ("Complainant's apartment") and is Complainant's
landlord.  The Building 555 is located at 555 Main Street, in New York, New York
("subject property").

1

Mark Greenberg Real Estate Co. LLC ("MGRE") is IH Preservation's and Island House's professional managing agent.

David B. Hirschhorn, a white male, is IH Preservation's Manager and a Vice-President of Island House's Board of Directors.

Richelle Neufville is a black/Caribbean female and is employed by MGRE as Island House's on-site property manager.

Alicia Pais is a black/Caribbean female and is employed by MGRE as assistant property manager and responsible for aiding Ms. Neufville with on-site duties.

Steven Greenbaum is a white male employed by MGRE as the Director of Property Management.

Taj Jackson is a white female bookkeeper employed by MGRE at its main office in Long Island City.

Kim Clark is a black female bookkeeper employed by MGRE at its main office in Long Island City.

Mark Zeltser is a white Russian male and was Island House's former superintendent who retired on November 2, 2017.

None of the Respondents receives Federal financial assistance. Exemptions under Section 803 and 807 of the Act do not apply.

Complainant leases a unit at the subject property and is an aggrieved person as defined in 42 U.S. § 3602(i) of the Act.

## II.   COMPLAINANT'S ALLEGATIONS

Complainant is a black Caribbean American female with Scottish and Irish ancestry. She was born in the Caribbean, Jamaica, West Indies.

Complainant alleges that:

1. Respondents Neufville and Pais refused to renew her lease from October 1, 2016 to September 30, 2018.

2. Respondents Jackson and Clark double billed and added excess charges to her rent since October 1, 2012.

3. Complainant alleges that her utilities are frequently turned off because of

purported work begin done in the building.  Her hot water is also frequently turned off for this reason.

4.  Complainant alleges that Respondents have refused to make needed repairs to her unit. Complainant states that she finally contacted the New York City Department of Housing Preservation and Development ("HPD") to inspect her apartment and that HPD issued six violations to Respondents.  Complainant states that no repairs have subsequently been made to her unit even after a judge ordered the repairs.

5.  Complainant states that she has been paying excessive rent when compared with other tenants with similar sized units.

Complainant maintains that all of the above actions have been taken in an effort to have her move so that Respondents can sell the unit at a profit.

Complainant believes that these actions on the part of the Respondents have been discriminatory on the basis of sex, race, and national origin.

## III.   RESPONDENTS' DEFENSES

Respondents deny all allegations of discrimination.

Respondents maintain that the complaints that Complainant has brought to HUD are duplicative of the claims already adjudicated or pending in various State Court proceedings, except Complainant has now, and for the first time, added a claim for discrimination simply to bring to this new forum, her on-going attacks against her landlord.

Respondent IH Preservation states that Complainant has substantial rental arrears.

Respondent IH Preservation states, while Complainant may be entitled to a renewal lease, her account has been placed on hold due to the various litigations that Complainant has filed and are still in process.

Respondent IH Preservation states that a condition to renewal is that the tenant not be in default, but Complainant has been in default since August 2015 and has not paid any rent since January 2018.  Respondent IH Preservation further states that it has not commenced a non-payment proceeding against Complainant because it had to first deal with Complainant's various lawsuits and complaints to regulatory agencies.

Respondent IH Preservation states that, on April 26, 2017, Complainant commenced an Article 78 proceeding against them and against the New York State Division of Housing and Community Renewal ("DHCR") claiming that they have been conspiring against her by overcharging her rent.

3

On September 7, 2018, the Supreme Court of the State of New York dismissed Complainant's Article 78 case. Respondent IH Preservation maintains that Complainant is barred from re-litigating her claim of rent overcharge since she had a full trial on the issue. As such, Respondents request that HUD dismiss Complainant's discrimination complaint of rent overcharge based on the legal doctrine of res judicata.

Respondents Island House, MGRE, Richelle Neufville, Alicia Pais, Steven Greenbaum, Taj Jackson, Kim Clark and Mark Zeltser, by their attorneys, also maintain that this complaint is barred by the statute of limitations.

Respondent MGRE states that MGRE and its employees do not have any ownership interest in Island House, nor do they have the power to do more than simply carry out personnel decisions made by the Island House's Board of Directors.

## IV.   FINDINGS

### BACKGROUND

Island House was initially occupied in June 1975.

Complainant executed her initial lease for Apartment 1302 with North Town Phase II Associates, L.P. in March 2000.

Complainant's apartment was formerly subject to Article II of the New York Private Housing Finance Law, otherwise known as the "Mitchell-Lama Law". Pursuant to the Mitchell-Lama Law, DHCR was responsible for supervising the buildings and for setting rent amounts, including Complainant's rent.

In 2012, DHCR authorized Island House to withdraw from Mitchell Lama and convert the residential apartments to a cooperative corporation, pursuant to a Plan for the Preservation of Affordable Housing and Withdrawal from the Mitchell-Lama program (the "Affordability Plan"). The Affordability Plan, which was approved by DHCR and various other New York State agencies, as well as the Island House Tenant Association, provided for the property to be converted to a cooperative consisting of 400 apartments in total within the three buildings located at 551, 555 and 575 Main Street on Roosevelt Island in Manhattan, New York.

Island House remained subject to regulation as a Mitchell-Lama development until September 28, 2012, when it voluntarily dissolved as a Mitchell-Lama development, and converted to a cooperative corporation in 2013, and the first closing took place in 2015.

As of December 22, 2015, 235 tenant-shareholders elected to purchase their apartments at the affordable price. As of July 27, 2016, 59 tenant-shareholders elected to purchase their apartments at the market price.   106 tenants, like Complainant, elected not to

4

purchase their apartments and were permitted to remain as non-purchasing tenants.

Paragraph 2(D) of the Lease provides that the Lease is NOT A RENT STABILIZED LEASE. Pursuant to the Lease, Tenant agreed to comply with the provisions of the Affordability Plan. Paragraph 2(A) of the Lease provides, in relevant part: "this Lease is subject and subordinate to the provisions of the Affordability Plan."

Paragraph 6(iv) of the Affordability Plan requires that all tenants (including Complainant) submit to the landlord an income affidavit each year. The Affordability Plan provides that any tenant who does not file an income affidavit (for whatever reason) will receive a 5% rent surcharge added to the tenant's rent for the subsequent year.

Complainant submitted her 2015 and 2016 income affidavits, for purposes of determining her rent increases for the 2016-2017 and 2017-2018 periods.

Respondents acknowledged that they did not send Complainant a lease renewal for the lease terms from October 2016 to September 2017 and from October 2017 to September 2018. Paragraph 6(i) of the Affordability Plan provides that the leases of non-purchasing tenants may be renewed as long as the apartment is continuously used as the tenant's primary residence and the tenant is not otherwise in default under the lease. Respondents advised the Department that Complainant has been in rent arrears since 2015. She owes the following back rent: $993.86 (2015); $999.44 (2016); and $4,751.12 (2017).

Complainant made sporadic rent payments in 2017, and for 2018 made only a $2,000 payment on October 26, 2018 (which was posted to her account on December 10, 2018). She had an open balance of $35,664.07 ($34,158.07 consists of rent, $1,500.00 consists of late fees and $6 in repair charges) as of January 1, 2019.

<u>First Small Claims Action</u>

In the Notice of Claim and Summons to Appear, filed on June 16, 2015 in the Civil Court of the City of New York, County of New York, Small Claims Part, Complainant sued Respondent IH Preservation, alleging "ACTION TO RECOVER MONIES ARISING OUT OF LOSS OF PROPERTY DUE TO RESPONDENT'S NEGLIGENCE AND LANDLORD OVERCHARGING RENT HARRASSING ME WITH THREATS" ("First Small Claims Action").

In the First Small Claims Case, a full trial was conducted before the Honorable Gerald Lebovits, a Judge of the Civil Court of the City of New York. By Notice of Judgment, after trial, a Judgment was entered in favor of Respondent IH Preservation and the Court dismissed the claim on December 2, 2015. At issue in that trial was Complainant's claim of rent overcharge due to the rent surcharge imposed due to her failure to file the 2013 income affidavit form, along with claims of harassment and property damage.

5

Complainant appealed the Judgment entered after trial in the First Small Claims Action.

On January 20, 2017, the Supreme Court of the State of New York, Appellate Term, affirmed the decision that Complainant failed to submit her 2013 affidavit of household income and, as a result, Respondent IH Preservation was warranted in increasing her rent pursuant to the terms of the governing lease documents.

### Complainant's Complaint of Rent Overcharge to DHCR

On April 29, 2016, Complainant submitted a "Tenant's Complaint of Rent Overcharge and/or Other Specific Overcharges in a Rent Stabilized Apartment" to DHCR alleging that Respondent IH Preservation charged her an excessive amount of rent over a three-year period from October 1, 2013 to September 30, 2016.

On May 20, 2016, DHCR dismissed Complainant' claim on the ground that her allegations concerned the amount of rent she was being charged in relation to her income. Such a claim was not cognizable under the New York City Rent Stabilization Law.

### First HP Action

On February 23, 2017, Complainant commenced an HP Action[1] in the Civil Court of the City of New York, County of New York alleging that there were six conditions in her apartment that required repair and constituted violations.

By letter, dated March 2, 2017, to Complainant from Respondent Neufville, the property manager, to verify the conditions requiring repair and to enable Respondents to perform the repairs.

By letter, dated March 5, 2017, from Complainant to Respondent Neufville, Complainant advised Respondents that Complainant was not going to provide access to make repairs.

In response to Complainant's HP Action and a complaint made to the New York City Complaint hotline, 311, an inspector from the New York City Department of Housing Preservation and Development ("HPD") inspected Complainant's apartment and determined that the conditions did not rise to any level of violation. HPD closed the complaint. The First HP Action was dismissed on March 16, 2017.

### Second Small Claims Action

*The Judge ruled in my favor and repairs were made*

On March 6, 2017, Complainant filed a second small claims action in the Civil Court of the City of New York, County of New York, Small Claims Part, against Respondent IH Preservation ("Second Small Claims Action").

---

[1] A tenant may sue a property owner in Housing Court to force them to make repairs and provide essential services. This case is called an "HP action."

This matter was tried before the Honorable Joan M. Kenney who entered a judgment in favor of IH Preservation and dismissed the action on January 9, 2018. The Court held: "Judgment in favor of Defendant. Claim Dismissed. No monetary award." In addition, the Court also held: "Claimant failed to establish with credible evidence any illegal overcharge of rent. Currently an HP is pending regarding property damage."

## Article 78 Proceeding

Complainant then commenced an Article 78 proceeding against IH Preservation and DHCR on April 26, 2017 claiming that they were conspiring against her in overcharging her rent. On September 7, 2018, the Supreme Court of the State of New York, dismissed Complainant's Article 78 case.

## Refusal to Renew Complainant's Lease

Complainant alleges that Respondent Neufville has increased her rent from $1,712.35 to $2,127.27 illegally and not according to her income since October 1, 2012.

Respondents assert that Complainant's rent was not illegally increased as her rent was increased, effective October 1, 2017, from $2,101.01 to $2,127.27 in accordance with the New York City Rent Guidelines Board increase (the "RGB increase") of 1.25%. This increase is provided for within the Affordability Plan and based on Complainant's 2016 income affidavit which was processed.



Complainant alleges that Respondent Neufville did not provide a lease renewal to Complainant for the period 10/01/2016 - 9/30/2017 and 10/01/2017 - 9/30/2018. Complainant alleges that Respondents Neufville and Pais also did not provide an income affidavit for 2016 to Complainant. Respondents maintain that Complainant was entitled to a lease renewal, but her account has been placed on hold due to the various litigations that Complainant filed, and due to the significant rent arrears since August 2015.

Complainant had an open balance of $35,664.07 as of January 1, 2019. Eviction proceedings have not commenced.

## Electricity and Gas Shut-offs

The investigation reveals that Con Edison has been in the process of upgrading the medium gas pressure to a new high-pressure gas service for all of the buildings on Roosevelt Island, including Island House. Accordingly, the Island House residents were notified of necessary gas shut-offs so that Con Edison could work on the upgrade:

- December 7 and 8, 2017: All Island House residents were notified that the buildings' boilers would be shut down and so there would be no hot water in the apartments, and they could not use their stoves, from 11:00 pm on December 7th through 7:00 am on

7

December 8th.

- December 14, 2017: All Island House residents were notified that the buildings' boilers would be shut down and so there would be no hot water in the apartments, and they could not use their stoves, from 3:00 am through 8:00 am on December 14th.

- January 16, 2018: All Island House residents were notified that the buildings' boilers would be shut down and so there would be no hot water in the apartments, and they could not use their stoves, from 10:00 pm through 8:00 am on January 16th.

- March 22, 2018: All Island House residents were notified that the buildings' boilers would be shut down and so there would be no hot water in the apartments, and they could not use their stoves, from 11:00 pm on March 22nd through 7:00 am on March 23rd.

<u>Respondents' Constant Harassment to Enter Complainant's Apartment</u>
<u>and Refusal to Make Repairs to her Apartment</u>

Complainant complained to HPD in July 2017 regarding repairs and painting needed to the Complainant's bathroom ceiling. Complainant advised the Department that all repairs were completed as of March 16, 2018. It is undisputed that Respondent IH Preservation was not provided access to complete the repairs sooner.

On April 3, 2018, Complainant requested a repair to the metal strip on the floor in her master bedroom. On April 6, 9 and 10, 2018, Respondents responded and attempted to gain access to make the repair; Complainant refused to permit access to her apartment in her absence. On April 13, 2018 at 1:28 p.m., Complainant advised Respondent Neufville via e-mail that Complainant had made the repair on her own and stated that "anymore attempt to enter my apartment is considered harassment and will be dealt with accordingly".

<u>Charging Complainant More Rent Than Other Richer Tenants with Larger</u>
<u>Apartments/Pricing Complainant Out</u>

True

Complainant alleges that she has always paid full market price for her apartment while other tenants who make more money than she with a larger apartment pay less, yet she is being targeted because of her race and gender.

The list of the current rents paid by each non-purchasing rental tenant shows that Complainant does not pay full market price for her apartment. Complainant's apartment has two bedrooms. Respondents billed Complainant the monthly rent in the amount of $2,127.27 from October 2017 to September 2018.

The list of rent from October 2017 to September 2018 shows that 35 tenants have two-

8

bedroom units, 16 tenants have three-bedroom units and 1 tenant has a 4-bedroom unit. Of the 35 two-bedroom apartments, 25 tenants' 2016 gross income is less than 100% of AMI as is Complainant's income, and their monthly rent varies from $1,836.49 to $2,127.27; 9 tenants' 2016 gross income is more than 100% but less than 200% of AMI, and their rent varies from $1,902.79 to $2,175.85 after adding 2% Income Adjustment; and one couple's 2016 gross income is more than 200% of AMI, and their rent is $2,310.52 after adding 5% Income Adjustment.

Of the 16 three-bedroom apartments, 8 tenants' 2016 gross income is less than 100% of AMI, and their monthly rent varies from $2,478.01 to $2,712.41; 7 tenants' 2016 gross income is more than 100% but less than 200% of AMI, and their rent varies from $2,718.41 to $3,128.94 after adding 2% Income Adjustment; and one couple's 2016 gross income is more than 200% of AMI, and their rent is $3,075.76 after adding 5% Income Adjustment.

There is only one four-bedroom apartment, and the couple's 2016 gross income is less than 100% of AMI, and their monthly rent is $2,936.36.

The investigation reveals that, as discussed fully above, other tenants who make more money and live in larger apartments than Complainant's do not pay less monthly rent than Complainant pays. Moreover, the record reflects that Complainant is being charged rent consistent with the Affordability Plan, as are other tenants.

ANALYSIS

### Different Terms and Conditions based on Sex, Race, and National Origin

Complainant alleges that Respondents discriminated against her on the bases of sex, race, and national origin by refusing to renew her lease; adding excess charges to her rent; turning off the gas, electricity, and water; refusing to make repairs to her apartment; charging her more rent than other richer tenants with larger apartments; and pricing her out to get her to move.

In order to prevail, Complainant must establish a *prima facie* case. If a *prima facie* case is established, then the burden shifts to Respondent to articulate a legitimate non-discriminatory reason for their actions. If this is articulated, then the burden shifts to Complainant to demonstrate that the articulated reason or reasons are pretextual.

A *prima facie* case of a claim under Section 804(b) of the Act requires that the following elements be met:

1. Complainant is a member of a protected class;  *Yes*
2. Complainant was Respondent's tenant;  *Yes*
3. Respondent imposed unfavorable or less favorable terms or conditions on  *Yes*

9

Complainant's tenancy; and

4. Respondent did not impose such terms or conditions on similarly situated tenants not of Complainant's protected class. *Yes he did out of greed*

1. <u>Complainant is a member of a protected class.</u>

Complainant is a black Caribbean American female with Scottish and Irish ancestry. She is a member of a protected class.

Accordingly, the first element of the claim is satisfied.

2. <u>Complainant was Respondent's tenant</u>

Complainant has been a tenant in Island House since 2000. The second element is established.

3. <u>Respondent imposed unfavorable or less favorable terms or conditions on Complainant's tenancy</u>

According to Complainant, Respondent imposed unfavorable or less favorable terms or conditions on Complainant's tenancy.

<u>Unfavorable Term 1</u>

The first alleged unfavorable term is that Respondent Neufville has increased Complainant's rent illegally not according to her income.

On October 1, 2017, based on Complainant's income affidavit which was processed, Respondents increased her monthly rent from $2,101.01 to $2,127.27. This increase was in accordance with the Rent Guidelines Board increase of 1.25% as provided for in the Affordability Plan. As to this allegation, this element has not been established.

<u>Unfavorable Term 2</u>

The second alleged unfavorable term is that Respondent Neufville refused to renew Complainant's lease for the lease terms from October 1, 2016 to September 30, 2017 and from October 1, 2017 to September 30, 2018.

Respondent IH Preservation states that a condition to renewal is that the tenant not be in default. Complainant has been in default since August 2015 and did not pay any rent in 2018 except for a $2,000 payment in October 2018. As of January 1, 2019, Complainant was in arrears of $35,664.07. As to this allegation, this element has not been established.

Unfavorable Term 3

The third alleged unfavorable term is that water, hot water, electricity and gas was shut off. Respondents acknowledged that water was shut off on August 14, 21, and 30, 2017; hot water was turned off on an as-needed basis depending on the repair; electricity and gas was shut off for Con Edison to work on the upgrade on December 7, 8 and 14, 2017 and January 16 and March 22, 2018. This affected all tenants. As to this allegation, this element has not been established.

Unfavorable Term 4

The fourth alleged unfavorable term is that Respondents refused to make repairs to Complainant's apartment. The record does not reflect that Respondent refused to make repairs.

Complainant complained to HPD in July 2017 regarding repairs. It is undisputed that Complainant would not provide access to make the repairs. Complainant agrees that all repairs were completed as of March 16, 2018.

On April 3, 2018, Complainant requested a repair to the metal strip on the floor in her master bedroom. On April 6, 9 and 10, 2018, Respondents responded and attempted to gain access to make the repair, but Complainant refused to permit access to her apartment in her absence, and was not home to provide access on the occasions that the staff knocked on her door to make the repairs. On April 13, 2018, Complainant advised Respondent Neufville that Complainant made the repair on her own and stated that "anymore attempt to enter my apartment is considered harassment and will be dealt with accordingly". As to the allegation regarding the failure to make repairs, this element has not been established.

Unfavorable Term 5

The fifth alleged unfavorable term is that Respondents charge Complainant more rent than other richer tenants with larger apartments. The list of the current rents paid by each non-purchasing rental tenant shows that Complainant does not pay full market price for her apartment. Complainant's apartment has two bedrooms. Respondents billed Complainant the monthly rent in the amount of $2,127.27 from October 2017 to September 2018, which is consistent with what other tenants pay for two-bedroom units; tenants with larger units pay more. As to this allegation, this element has not been established.

Unfavorable Term 6

Complainant submitted her 2015 and 2016 income affidavits, but Respondents did not send Complainant a lease renewal for the lease terms from October 2016 to September

11

2017 and from October 2017 to September 2018.

Paragraph 6(i) of the Affordability Plan provides that the leases of non-purchasing tenants may be renewed as long as the apartment is continuously used as the tenant's primary residence and the tenant is not otherwise in default under the lease. Complainant has been in rent arrears since August 2015. Complainant made sporadic rent payments in 2017, but made one payment of $2,000 on October 26, 2018. In accordance with the Affordability Plan's requirements, Respondents did not renew Complainant's lease for the lease terms from October 2016 to September 2017 and from October 2017 to September 2018. Complainant, however, continues to reside in her unit. As to this allegation, this element has not been established.

*False* [handwritten annotation in left margin]

Unfavorable Term 7

Complainant alleges that she was required to pay excess rent charges. There is no evidence that Respondents added excess charges only to Complainant's rent account by increasing Complainant's monthly rent from $2,101.01 to $2,127.27 on October 1, 2017. In accordance with the Affordability Plan's requirements, Respondents calculated the rent increase to 105 other non-purchasing tenants of both sexes and various races and different national origins.

*False I sent names of 58 residents and lord is trying to evict in housing court* [handwritten annotation in left margin]

Complainant is not the only resident who has been assessed a 5% surcharge for failure to submit an income affidavit. The Affordability Plan is applied equally to all residents who fail to submit their income affidavits, regardless of their sex, race, and national origin. For the lease period from October 2015 to September 2016, 16 residents did not submit their calendar year 2014 Income Affidavits and were thus assessed the 5% surcharge. Of these, 5 are males (2 Caucasian, 1 Asian, 1 Cameroon and 1 Hispanic), 8 are females (1 Brazilian, 3 Caucasian, 1 Mongolian and 3 Black), and 4 are male and female couples (2 Moroccan and 2 Cameroon). A Caucasian female even failed to submit her 2015 and 2016 Income Affidavits, so her rent increase for the 2016-2017 and 2017-2018 periods were subject to the 5% surcharge.

*Mail Fraud* [handwritten annotation in left margin]

The investigation reveals that Respondents have not imposed unfavorable or less favorable terms or conditions on Complainant's tenancy by refusing to renew her lease; adding excess charges to her rent; turning off the gas, electricity, and water; refusing to make repairs to her apartment; charging her more rent than other richer tenants with larger apartments; and pricing her out to get her to move.

*Bribery Accepted* [handwritten annotation in left margin]

The third element is not established.

Complainant has not established a *prima facie* case.

Accordingly, there is no reasonable cause to believe that Respondents treated Complainant differently, on the bases of her sex, race, or national origin, in violation of Sections 804(b) of the Act.

12

## Harassment based on Sex, Race, and National Origin

Complainant alleges that Respondents constantly harassed her by entering her apartment and refusing to make repairs to her apartment.

A *prima facie* case of a harassment claim under Section 818 of the Act requires that the following elements be met:

1. Complainant is a member of a protected class;
2. Respondent subjected Complainant to unwelcome harassment;
3. The harassment complained of was because of Complainant's protected class; and
4. The harassment was sufficiently severe or pervasive to interfere Complainant's use or enjoyment of her home.

1. Complainant is a member of a protected class.

Complainant is a black Caribbean American female with Scottish and Irish ancestry. She is a member of a protected class.

Accordingly, the first element of the claim is satisfied.

2. Respondent subjected Complainant to unwelcome harassment.

Complainant states that Respondents' management is constantly harassing her to enter her apartment due to construction, upsetting her life and causing damage to her apartment. The record does not reflect that Respondents harassed Complainant.

The second element has not been established.

3. The harassment complained of was because of Complainant's protected class.

From January 2017 to January 2018, Respondents' staff completed approximate 1,784 repair work orders in response to the repair requests from numerous tenants of both sexes, various races and different national origins. There is no evidence that the complained of activity was based on her sex, race or national origin.

The third element has not been established.

4. The harassment was sufficiently severe or pervasive to interfere Complainant's use or enjoyment of her home.

The investigation does not reveal that Respondents harassed Complainant. Moreover, even assuming arguendo that there was harassment, something the Department's

13

investigation did not find the alleged harassment was sufficiently severe or pervasive to interfere Complainant's use or enjoyment of her home.

The fourth element has not been established.

Complainant has not established a *prima facie* case.

Accordingly, there is no reasonable cause to believe that Respondents harassed Complainant, on the bases of her sex, race, or national origin, in violation of Sections 818 of the Act.

## V.     CONCLUSION

Based on the evidence set forth in the investigation, there is no reasonable cause to believe that Respondents discriminated against Complainant or harassed her on the basis of her sex, race, or national origin in violation of Sections 804(b) or 818 of the Act.

## VI.    ADDITIONAL INFORMATION

Notwithstanding this determination by HUD, the Fair Housing Act provides that the Complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require a dismissal, if any, be publicly disclosed, unless a party requests that no such release be made. This request must be made by the Complainant or Respondent within thirty (30) days of receipt of the determination to the Director, Office of Enforcement, Office of Fair Housing and Equal Opportunity, 451 Seventh Street, S.W., Washington, D.C. 20410. Notwithstanding such request by the Complainant or Respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from: Jay Golden, Region II Director, Office of Fair Housing and Equal Opportunity, U.S. Department of Housing and Urban Development, 26 Federal Plaza, Room 3532, New York, NY 10278.

_____
Date

_____
Jay Golden
Region II Director
Office of Fair Housing
and Equal Opportunity

15



New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/nynopen.html

FEB 2 8 2018

Carol D. Commissiong
555 Main St., Apt. 1302
New York, NY 10044

Dear Complainant:

Subject: Housing Discrimination Complaint
    Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC, et al.
    Inquiry No. 548978
    HUD Case No. 02-18-9387-8

Your complaint, alleging one or more discriminatory housing practices, was officially filed on February 26, 2018 as a complaint under the Federal Fair Housing Law, 42 U.S.C. Sections 3601-3619. For your records, we are enclosing a copy of your complaint, and, as required by law, a copy has been sent to the respondent(s).

The purpose of this letter is to inform you of: 1) the rights you have during the processing of this complaint, 2) the rights each respondent has in responding to this complaint, and 3) the steps the U.S. Department of Housing and Urban Development (the Department) will take to determine whether the complaint has merit.

In order to ensure that the Department informs you properly of the law's requirements, this notification letter contains language required by the law. A similar letter is used to notify all parties whenever a formal complaint has been filed with the Department under the Federal Fair Housing Law.

We are governed by federal law, which sets out what steps we must take when a formal complaint is filed. The law also includes steps that each respondent can take to answer or refute the allegations of this complaint.

Exhibit B

HUD File complaint with
internet/mail/HPD court papers
copies
Attached

Acceptance Letter

HUD Case No. 02-18-9387-8

The law also requires us to notify you that section 818 of the Fair Housing Act makes it unlawful for a respondent or anyone else to coerce, intimidate, threaten, or interfere with you in your exercise or enjoyment of, any right granted or protected under the Federal Fair Housing Law. The law also makes it illegal for anyone to coerce, threaten or interfere with you for your having aided or encouraged any other person in the exercise or enjoyment of, any right or protection granted to them under the Federal Fair Housing Law.

Some explanatory material on the law is enclosed for your information.

If you have any questions regarding this case, please contact Investigator, Tangchi Yeh at the New York Office at (212) 542-7522. Please refer to the case number at the top of this letter in those contacts, and keep this office advised of any change of your address or telephone number. We hope this information has been helpful to you.

Sincerely,

Jay Golden
Region II Director
Office of Fair Housing and Equal Opportunity

Enclosures

Acceptance Letter

HUD Case No. 02-18-9387-8

Under federal law, a respondent can file an answer to this complaint or any amendment made to this complaint within 10 calendar days of receipt of the Department's notification letter to him or her. Each respondent's answer must be signed and affirmed that the response is truthful by including the statement "I declare under penalty of perjury that the foregoing is true and correct". A respondent can, with the agreement of the Department, amend his or her answer at any time during the investigation.

Our responsibility under the law is to undertake an impartial investigation and, at the same time, encourage all sides to reach an agreement, where appropriate, through conciliation. The law requires us to complete our investigation within 100 days of the date of the official filing of the complaint. If we are unable to meet the 100-day requirement for issuing a determination, the law requires that we notify you and the respondent(s) and explain the reasons why the investigation of the complaint is not completed.

In handling this complaint, we will conduct an impartial investigation of all claims that the Fair Housing Act has been violated. If the investigation indicates that there is not evidence establishing jurisdiction, the case will be dismissed. At any point, you can request that our staff assist you in conciliating (or settling) this complaint with the respondent(s). If the case is not resolved, we will complete our investigation and decide whether or not the evidence indicates that there has been a fair housing violation. If the parties involved have not reached an agreement to settle the complaint, the Department will issue a determination as to whether there is reasonable cause to believe a discriminatory housing practice has occurred.

If our investigation indicates that there is reasonable cause to believe that an unlawful discriminatory housing practice has occurred, the Department must issue a charge. If the investigation indicates there is no reasonable cause to believe that discrimination has occurred, the complaint will be dismissed. In either event, you will be notified in writing.

If the determination is one of reasonable cause, the notification will advise you and the respondent(s) of your rights to choose, within 20 days, whether you wish to have the case heard by an Administrative Law Judge or to have the matter referred for trial in the appropriate U.S. District Court.

Under federal law, even if the Department dismisses the complaint, you still have the right to bring an individual suit under the Federal Fair Housing Law. You may file your lawsuit in an appropriate federal, state or local court within two years of the date of the alleged discriminatory practice or of the date when a conciliation agreement has been violated. The law does not count, as part of the two-year period, any of the time when a proceeding is pending with the Department. You also have the legal right to file a lawsuit in court, even if your complaint formed the basis for a charge, as long as an Administrative Law Judge has not started a hearing on the record with respect to the charge.

There may be other applicable federal, state or local statutes under which you and/or the respondent(s) may initiate court action. You may consult a private attorney in this regard.

# Housing Discrimination Complaint

**U.S. Department of Housing and Urban Development**
Office of Fair Housing and Equal Opportunity

OMB Approval No. 2529-0011

Please type or print this form

Public Reporting Burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Read this entire form and all the instructions carefully before completing. All questions should be answered. However, if you do not know the answer or if a question is not applicable, leave the question unanswered and fill out as much of the form as you can. Your complaint should be signed and dated. Where more than one individual or organization is filing the same complaint, and all information is the same, each additional individual or organization should complete boxes 1 and 7 of a separate complaint form and attach it to the original form. Complaints may be presented in person or mailed to the HUD State Office covering the State where the complaint arose (see list on back of form), or any local HUD Office, or to the Office of Fair Housing and Equal Opportunity, U.S. Department of HUD, Washington, D.C. 20410.

| This section is for HUD use only | Inquiry No.: 548978 | | |
|---|---|---|---|
| Number 02-18-9387-8 | (Check the applicable box) ☒ Referral & Agency (specify) ☐ Systemic ☐ Military Referral | Jurisdiction ☒ Yes ☐ No ☐ Additional Info | Signature of HUD personnel who established jurisdiction *Robt Trmst* |
| Filing Date 02/26/2018 | | | |

**1. Name of Aggrieved Person or Organization** (last name, first name, middle initial) (Mr.,Mrs.,Miss,Ms.)
Commissiong Carol D
Home Phone 646 279 5988
Business Phone 646 279 5988

Street Address (city, county, State & zip code)
555 Main St. Apt. #1302 New York NY 10044

**2. Against Whom is this complaint being filed?** (last name, first name, middle initial)
Richelle Neufville and Mark Greenberg Real Estate Co. LLC
Phone Number 212-755-3012

Street Address (city, county, State & zip code)
30-30 Northern Blvd. Suite #400 LI City NY 11101 & 545 Main St NY NY 10044

Check the applicable box or boxes which describe(s) the party named above:
☐ Builder ☐ Owner ☐ Broker ☐ Salesperson ☐ Supt. or Manager ☐ Bank or Other Lender ☒ Other  *Property Mgmt.*

If you named an individual above who appeared to be acting for a company in this case, check this box ☒ and write the name and address of the company in this space:
Name Mark Greenberg Real Estate LLC   Address 30-30 Northern Blvd. suit #40 LI City NY 11101

Name and identify others (if any) you believe violated the law in this case:
Alicia Pais, Steven Greenbaum, Taj Jackson, Kim Clark, Mark Zeltser

**3. What did the person you are complaining against do?** Check all that apply and give the most recent date these act(s) occurred in block No. 6a below.
☐ Refuse to rent, sell, or deal with you
☐ Falsely deny housing was available
☐ Engage in blockbusting
☐ Discriminate in broker's services
☒ Discriminate in the conditions or terms of sale, rental occupancy, or in services or facilities
☐ Advertise in a discriminatory way
☐ Discriminate in financing
☐ Intimidated, interfered, or coerced you to keep you from the full benefit of the Federal Fair Housing Law
☒ Other (explain) Lease renewal, turn off hot water, heat, double billing rent

**4. Do you believe that you were discriminated against because of your race, color, religion, sex, handicap, the presence of children under 18, or a pregnant female in the family or your national origin?** Check all that apply.

| Race or Color | Religion | Sex | Handicap | Familial Status | National Origin |
|---|---|---|---|---|---|
| ☒ Black ☐ White ☐ Other | ☐ (specify) Catholic Christian | ☐ Male ☒ Female | ☐ Physical ☐ Mental | ☐ Presence of children under 18 in the family ☐ Pregnant female Divorced | ☐ Hispanic ☐ Asian or Pacific Islander ☐ American Indian or Alaskan Native ☒ Other (specify) Caribbean |

**5. What kind of house or property was involved?**
☐ Single-family house
☐ A house or building for 2, 3, or 4 families
☒ A building for 5 families or more
☐ Other, including vacant land held for residential use (explain)

**Did the owner live there?**
☐ Yes
☒ No
☐ Unknown

**Is the house or property**
☒ Being sold?
☒ Being rented? Converted condo? Partial rental

**What is the address of the house or property?**
(street, city, county, State & zip code)
555 Main St. Apt. #130, NY NY 10044

**6. Summarize in your own words what happened.** Use this space for a brief and concise statement of the facts. Additional details may be submitted on an attachment.
Note: HUD will furnish a copy of the complaint to the person or organization against whom the complaint is made.

Richelle Neufville harrass & threaten me, illegally refuse to renew lease unlawfully invade privacy broke into my Apt. unauthorized stole files, over billing damage Apt didn't provide notice

**6a.** When did the act(s) checked in item 3 occur? (Include the most recent date if several dates are involved)
Friday 1/19/2018
60-90 day notice

**7.** I declare under penalty of perjury that I have read this complaint   Signature & Date

Rent increase or the Lease Renewal.
I am a Boni-Fide mitchelle LAMA Tenant
have been renting my Apt. since March 1[?]
Building converted to Condop in 2015 bu[?]
other tenants remain as renters und[?]
Affordability Plan. Landlord musta[?]
all original renters living in building b[?]
an income Affidavit and use that [?]
ON any rent increase. Landlord [?]
to provide me with an income Affic[?]
proceed to illegally increase ren[?]
many inquiries   then I got Affid[?]
2014 but Not 2013 I maild by[?]
mail before deadline but they sent[?]
5 wks later after I maided. [?]
DHCR but got no help. I also did[?]
person and made receptionist sign receipt [?]
and they Fire Hire Property Mgr gave me q[?]
For 2015 So landlord Fire For doing his Job[?]
Richelle Neufville   has not Renew lease Foro[?]
but I remain in Apt legally. Then my rent w[?]
from $1,712.35 to $2,127.27 illegally Not[?]
my income. Landlord & Staff payoff deliu[?]
won deliver some mails & return my incom[?]
[?] weeks after mailing   I don't have any [?]

Reference # 545458 | 2018

Carol Commissiong
555 Main St., Apt # 1302
New York NY 10044
carolcommissiong@gmail.com646 – 279 0 5988

Housing Discrimination Complaint
    by **Carol Commissiong** against **Mark Greenberg Real Estate Co. LLC** and staffs:
                      Richelle Neufville – Property Manager
                      Alicia Pais – Assistant Property Manager
                      Steven Greenbaum – Director Property Manager
                      Taj Jackson – Controller
                      Kim Clark – Accountant
                      Mark Zeltser – Superintendant/lives in building as shareholder
but no longer works there/FIRED but residents are told he retired???
**Main Office**: 30-30 Northern Blvd.    **On-site Office**: 545 Main Street
              Suite # 400                  New York NY 10044
              New York NY 11101
**REFERENCE # 545458 related to Complaint # 545357 can be used as support**
Landlord/Owners – David B. Hirschhorn doing business as IH Preservation Partners LLC
Office is also located at 545 Main St. NY NY 10044 Tel. 212-755-3012 it is the same
office and address I send my rent payment every month and all snail mail
communications. However, this is also the on-site office for Mark Greenberg Real Estate
Co. LLC. There have been 2 other property management companies and they also used
this same on-site office. I have never had any problems with the previous management
companies or property managers. It is the same landlord with an added partner/s. The
original name was Northtown Phase II but changed in July 2015 when building exit the
Mitchell-Lama Program and converted to Condop partially. The building was 100%
rental when I moved in on March 1, 2000 and was in the Mitchell Lama program that
mirrors rent stabilization law but was remove from the program in 2015 and converted to
Condop but remain partial rental under the Affordability Plan which continues to mirror
rent stabilization laws to original bona-fide Mitchell-Lama tenants who didn't purchase
their apartment but continues to rent. By law, the landlord must renew lease if tenants
continue to rent and follow all rent stabilization housing laws by providing all rental
tenants who lived in the building in 2012 and earlier with an income affidavit and lease
renewal with 60-90 days notice before current lease agreement term expires. This rule
was violated by landlord and partners and management company staffs who breach the
lease agreement. In particular, Richelle Neufville and Alicia Pais who acted unethically
under the orders of the director – Steven Greenbaum and landlord – David B. Hirschhorn.
In addition, there have been illegal rent increases and fees, double/over-billing by the
accountants – Kim Clark and Taj Jackson who are also acting under the commands of
their bosses and owners. Paying off the mail delivery man Rafael known with the initials
RS and paying off staffs at DHCR who didn't help me when I went to them with my
complaint. DHCR is named on my lease with exclusive authority to oversee rent
increases. However, I filed an article 78 against DHCR for violation and have a calendar
date 2/21/2018 pending to plea my case in Supreme Court.

1

I am also refused maintenance to my apartment. In addition, landlord staffs caused a lot of damage to my apartment and refused to fix that as well. Furthermore, Super - Zeltser randomly turned off my water every week claiming they're fixing pipes. Sometimes I have water but no hot water or heat and on several occasions my electric and gas were turned off but I received no prior notice stating needed repairs only when it's for the entire building, then I get a email blast or news letter.  For the last 2 years I had no peace in my home because of the construction noise in building and GUT RENOVATION ripping up floors, knocking down walls, drilling, nailing, knocking and pounding in apartment above mine which started on March 1, 2016 to present Monday – Saturday 7:30 am – 5 pm and some Sundays. Management claims apartment construction is finish but I still hear it early mornings and when I come home at night and weekends which means share holder/tenant is doing their own construction or management lied again.

I have been harassed, terrorized and tortured by the Super Mark Zeltser and Richelle Neufville. Zeltser attacked me in basement hallway, cornered me and got into my face demanding to enter my apartment when I am not home. I was not physically harmed so there's no police report but I'm sure it's on surveillance camera which I believed kept the super from getting physical. I took time off from work so I am home when super and handyman entered my apartment because they claim pipe in my apartment is connected to above apartment. They cut hole in my wall and I could hear workers talking in apartment above, then I recognized super's voice who said "I'll give her something to complain about." Immediately there was a flood of water came down my walls flooding my apartment with all the urine and feces from toilet above into my apartment which caused a huge damage to walls and floor, which had to be repaired. It took 2 weeks with me taking off more time off from work costing me a loss of $1,500 in income which I couldn't make-up because someone else did the job.  The smell was unbearable.

Another time, there was more damage to my apartment in the bathroom ceiling and walls water leaking which got worst each week. I reported it to management, the handyman came inspected my apartment and the apartment above mine. He found the problem and said it was caused by a shower and toilet installment in apartment above mine. In addition, it also caused mold in my bathroom ceiling and walls. Weeks went by which turned into months but no repairs were made. Each handyman said they'll do the repair but can't without a work ticket which the Super and management has to authorize because damage is caused by the construction with outside contractors hired by the building and Super. So I complained to HPD but nothing was fixed and they had to pay a $300 fine. Still no repairs and I suffered through the horrible condition in my home for months. I went back to HPD who sent another inspector who issued 6 violations and said I should go to court which I did. Landlord still made no repairs and landlord was in contempt and paid another fine of $1,680.00 for the 6 violations but no repairs were made. I went back to HPD court again and this time judge issued a final agreement between me, HPD attorney and landlord's attorney carried a $25,000 fine and the major repairs were made but 2 needed repairs are still pending.

Richelle Neufville has a big arrogant ego, became furious that the court order over-rides hers, so she continues to harass and threaten me with the most recent incident occurring

2

on Friday 1/19/2018 at 10: 25 am, pounding and kicking my door which I opened and saw her with a weapon in her hand (long stick) demanding entry and said she has the right to enter my apartment whenever she wants because I'm just renting. I told her if she didn't leave I will call the police and locked my door to avoid her forcing her way in. I am in GREAT need of a restraining order to keep her from harassing me because it seems she's not going to stop until somebody gets hurt. I would like to avoid the worst case scenario from happening.

It is very obvious that the landlord hired her to get rid of all the rental tenants by using whatever force necessary by starting with certain types that are easy prey before moving onto the next. I can't imagine what they're doing to the Section-8 tenants and seniors.

I have always paid full market price for my apartment while other tenants who make more money than me with a larger apartment pay less, yet I am being targeted because of my race and gender. I have documents to prove the mail fraud, my notarized income affidavit and certified mail receipts stamped by the post office. I suspect that here has been unauthorized entry to my apartment because vital documents were stolen and I have a feeling Richelle Neufville is the guilty perpetrator. I have no intention of moving out of my home but all this ill treatment is to get me to vacate my home.

I remember the case of Marla Hanson, whose face was slashed by 2 men hired by her landlord to end her modeling career because of a rental dispute. That will never ever happen to me but I am cautious and I will not move. I seek relief and punitive damages.

Furthermore, Alicia Pais didn't provide me with the lawful 60-90 days notice and 2013 income affidavit, rent increase letter and lease renewal for 2015/2016/2017/2018. I inquired with management but got nothing and months went by with no property manager then finally one was hired named Adrian who provided me the lease renewal for 2015 so he got fired after 2 months. But still I got no 2013 income affidavit because he said "landlord won't change his mind." I went to court and was told housing court doesn't recover money to go to small claims who said they can't do anything about lease renewal or property damages. Landlord couldn't prove they gave me income affidavit but I had the burden of proving I didn't get it and case was close but I did get a 2014 income affidavit and filled-out, notarized and sent by certified mail before deadline but they claimed they never got it and raised rent 11% increase. Next I got 2015 income affidavit filled it out and went directly to on-site office and hand it in with the receptionist and administrator John Falvo and I asked him to signed a receipt as my proof which he did so he got fired too for doing his job. Note, I still have not received a lease renewal.

Next, I went to court again because management (Neufville and Pais) claimed they didn't get my 2014 income affidavit. My case was called and there was a conference with judge, I state my case and judge said he doesn't know what Affordable Rental Plan means and said my case looks like some type of discrimination and that small claims court wasn't the right court for this. However, I said my main concern was the overcharge rent increase and would like to present my case to the court. So he told me to meet with the court mediator to see if we can come to some type of agreement. I showed my original

certified mail receipt to small claims court mediator and landlord's attorney and the mediator determine that I have a case for 2014 but can't do anything about 2013. An agreement was made with the 3 of us which states that "landlord attorney – Angelo Ficarrotta would setup a date with property manager – Richelle Neufville to go over the breakdown numbers of overcharge rent and return to court in 3 weeks. However, property manager wouldn't meet with me or return my emails and phone calls.

When I return to court Neufville and Pais were there and I went over the numbers with Neufville, court mediator and landlord's attorney but the landlord had the final say and refused any agreement. While in court speaking with the mediator, Pais and Neufville had a slip of the tongue and said they sent out 2016 income affidavit. I was surprised and responded I haven't received anything as of yet. Which means it was their intention to not include me again like 2013. 10 days later I received at my door the 2016 income affidavit, news letter stating that there was a prior notice stating another increase 1.25% increase and additional income adjustment of 5% but no lease renewal was accompanied which is supposed to be with the affidavit. Also, I never got any prior notice.

I replied with the completed income affidavit notarized, income tax return for 2016 and a letter stating that I never got a prior income increase notice or lease renewal. I sent it by certified mail with request for return signed receipt which came back 10 days later 10/11/17 with a very shady signature and an incomplete date of receipt which is still 2 days before deadline. But this was evidence of mail fraud and proof that they claim they never got it or it came after deadline. However, I went online and saw that it was delivered on 10/10/17 and printed the tracking evidence before it could be deleted. It is unbelievable the illegal measures the staffs and mail-man will do. Whatever they're being paid may or may not be enough to bail them out of jail which is where they belong.

I hope and pray that I will get the justice I seek and to protect this from happening to other tenants. I've heard stories about what happen to senior citizens and it's happening to me an educated young woman. What's even more shocking is that some of the staffs are from a minority group and don't live in the building but engage in treachery. It's about money in their pockets from scamming, deceit, lies, jealousy and fraud. On the other hand it's racketeering, bribery, extortion and hate crime from landlord and management

I put my sincere trust in HUD to receive a fair trial and justice, not just for me but for all the other tenants who may not have the stamina to fight for their right. It is because of the many brave people who have fought for the Civil Rights Act of 1968 and 1988 that I am able to make this complaint and look forward to a speedy solution.

Thank you for your time.

Regards,

Carol Commissiong
Carol Commissiong

4



**U.S. Department of Housing and Urban Development**
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/

REGULAR AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Carol D. Commissiong
555 Main Street, Apt. 1302                    MAR 14 2018
New York, NY 10044

Dear Ms. Commissiong:

SUBJECT:   <u>Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.</u>
           Title VIII No. 02-18-9387-8

     On February 26, 2018, Complainant, Carol D. Commissiong. filed a complaint with the U.S. Department of Housing and Urban Development (the Department or HUD), alleging that Island House Tenants Corp., IH Preservation Partners LLC., David B. Hirschhorn-President of Island House Tenants Corp. and Manager of IH Preservation Partners LLC., Mark Greenberg Real Estate Co. LLC. and its employees Richelle Neufville-Property Manager, Alicia Pais-Assistant Property Manager, Steven Greenbaum-Director Property Manager, Taj Jackson-Controller, Kim Clark-Accountant and Mark Zeltser-Superintendant discriminated against her on the bases of her sex and race. Our office is investigating the complaint under the Federal Fair Housing Act, 42 U.S.C. §§ 3601-3619.

     In order for us to proceed with this complaint investigation as quickly as possible, we are requesting submission of certain documents and information. Your response to the enclosed data request should be submitted within 10 days of receipt of this letter. This information is requested under the authority of the regulation implementing the Federal Fair Housing Act, as amended, at 24 CFR §103.215. This request may not be exhaustive. As the investigation proceeds, additional information might be required.

     Please be advised that we are always interested in pursuing conciliation with all parties involved to settle the complaints.

     If you have any questions with regard to this complaint investigation, please contact Ms. Tang-Chi Yeh at (212) 542-7522 or by email at Tangchi.Yeh@hud.gov.

Sincerely,

Jo-Ann Frey, Director
New York Program Center
Office of Fair Housing and Equal
  Opportunity

Enclosure

U.S. DEPARTMENT OF HOUSING AND U⁵
NEW YORK REGIONAL OFFICE
JACOB JAVITS FEDERAL BUILDING
26 FEDERAL PLAZA
NEW YORK, NEW YORK 10278-0068

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

115

CERTIFIED MAIL

7014 0510 0000 1691 7252

# DATA REQUEST

1. Identify your race and national origin.  What do you mean by indicating that you are Caribbean in the HUD 903 complaint form?

2. When did Carol D. Commissiong move into her apartment at 555 Main Street, Apt. 1302, New York, NY 10044?  Provide a copy of all the leases and lease renewals between Carol D. Commissiong and her landlord and/or its managing agent.

3. When, how, where, by whom and for how many times did Carol D. Commissiong's landlord and/or its managing agent and/or Property Manager Richelle Neufville and Assistant Property Manager Alicia Pais refuse to give Complainant a 60-day notice with a lease renewal as required by law from January 1, 2017 to the present? Please specify the occasions and provide the witnesses and/or supporting documentation.

4. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding the lease renewal of bona-fide Mitchell-Lama non-purchasing rental tenants.

5. When, how, where, by whom and for how many times did Carol D. Commissiong's landlord and/or its managing agent and/or Controller Taj Jackson and Accountant Kim Clark double bill Complainant and add excess charges to her rent from January 1, 2017 to the present?  Please specify the occasions and provide the witnesses and/or supporting documentation.

6. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding the billing of rent and the adding of charges.

7. Complainant asserts that Richelle Neufville, Alicia Pais, Taj Jackson and Kim Clark were acting on account of the orders of Director Property Manager Steven Greenbaum and the landlord David B. Hirschhorn.   Provide the witnesses and/or supporting documentation.

8. Complainant states that her electricity and gas was turned off several times because management claimed work was being done throughout building.  Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

9. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding the turning off of the electricity and gas in the rental units.

10. Complainant states that her water is turned off just about every week at random times without notice. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

11. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding the turning off of the water in the rental units.

Case Name: Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC, et al.

Case 1:19-cv-06327-VSB Document 5 Filed 10/10/19 Page 41 of 110

12. Complainant states that sometimes, she doesn't have hot water. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

13. Complainant states that construction in other apartments has damaged her apartment. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

14. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding the construction in upstairs non-rental apartment causing damages to downstairs rental apartment.

15. Complainant states that Management is constantly harassing her to enter her apartment due to construction, upsetting her life. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

16. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding entering the rental units due to construction.

17. Complainant states that Respondents won't make repairs to her apartment. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

18. Complainant states that HPD inspected her apartment and issued 6 violations. Please provide a copy of the six violations.

19. Complainant states that no repairs were made to her apartment even though a judge ordered the repairs. Please provide a copy of the judge's order.

20. Complainant states that Respondent landlord would rather pay the fines because his intention is to get Complainant out. Provide the supporting documentation.

21. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding repairs.

22. Provide copies of all written requests for repairs from Complainant to her landlord and/or its managing agent from January 1, 2017 to the present, and the responses to those requests.

23. Provide the names and contact information of those individuals who made the decision not to conduct repairs in Complainant's apartment.

24. Explain why you named Mark Zeltser Superintendant as Respondent. Specify all the dates and occasions of these events from January 1, 2017 to the present. Clearly describe what happened on each day, and what Mark Zeltser and/or other maintenance workers did to you on each occasion. Provide the witnesses and/or supporting documentation.

Case Name: Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.
Title VIII No. 02-18-9387-8

25. You allege that "Property Manager Richelle Neufville has not renewed lease for 2017/2018, but I remain in Apartment legally. Then my rent was increased from $1,712.35 to $2,127.27 illegally not according to my income." Provide the supporting documentation.

26. You allege that "Landlord and staff payoff delivery man not to deliver some mails. I return my income affidavit 5 weeks after mailing." Provide the name and contact information of the delivery man. Provide the witnesses and/or supporting documentation.

27. You allege that Respondent landlord and its staff paid off staff at DHCR who didn't help you when you went to them with your complaint. Please specify the occasions from January 1, 2017 to the present, the name and contact information of the DHCR staff, and provide the witnesses and/or supporting documentation.

28. Provide a copy of the legal documentation of your Article 78 proceeding against DHCR.

29. Specify all the dates and occasions when Mark Zeltser and Richelle Neufville attacked you from January 1, 2017 to the present. Clearly describe what happened on each day, and what Mark Zeltser and Richelle Neufville did to you on each occasion. Provide the witnesses and/or supporting documentation.

30. It was alleged that "I complained to HPD but nothing was fixed and they had to pay a $300 fine. Still no repairs and I suffered through the horrible condition in my home for months. I went back to HPD who sent another inspector who issued 6 violations and said I should go to court which I did. Landlord still made no repairs and landlord was in contempt and paid another fine of $1,680.00 for the 6 violations but no repairs were made. I went back to HPD court again and this time judge issued a final agreement between me, HPD attorney and landlord's attorney carried a $25,000 fine and the major repairs were made but 2 needed repairs are still pending." Provide the witnesses and/or supporting documentation.

31. It was alleged that Richelle Neufville continues to harass and threaten you. The most recent incident occurring on Friday 1/19/2018 at 10:25 am, where she pounded and kicked your door. She had a weapon in her hand (long stick) demanding entry and said to you that she has the right to enter your apartment whenever she wants because your rent. Provide the witnesses and/or supporting documentation.

32. You allege that you have always paid full market price for your apartment while other tenants who make more money than you with a larger apartment pay less, yet you are being targeted because of your race and gender. Provide the witnesses and/or supporting documentation.

33. You allege that you have documents to prove the mail fraud, your notarized income affidavit and certified mail receipts stamped by the post office. Provide the witnesses and/or supporting documentation.

Case Name: Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.
Title VIII No. 06380-9353

Case 1:19-cv-06380-VSB   Document 3   Filed 10/10/19   Page 43 of 110

34. You allege that you suspect that here has been unauthorized entry to your apartment because vital documents were stolen. Provide the witnesses and/or supporting documentation, including any police reports.

35. You allege that you replied with the completed income affidavit notarized, income tax return for 2016 and a letter stating that you never got a prior income increase notice or lease renewal. You allege that you sent it by certified mail with request for return signed receipt which came back 10 days later 10/11/17 with a very shady signature and an incomplete date of receipt which is still 2 days before deadline. You went online and saw that it was delivered on 10/10/17 and printed the tracking evidence before it could be deleted. Provide the witnesses and/or supporting documentation.

36. Please explain why you believe that Respondents double billed you, added excess charges to your rent, refused to renew your lease, and refused to make repairs in your apartment, because of your sex, race and national origin.

37. Please provide any additional information you deem relevant to this complaint investigation.

Under federal law, a respondent can file an answer to this complaint or any amendment made to this complaint within 10 calendar days of receipt of the Department's notification letter to him or her. Each respondent's answer must be signed and affirmed that the response is truthful by including the statement "I declare under penalty of perjury that the foregoing is true and correct." A respondent can, with the agreement of the Department, amend his or her answer at any time during the investigation.

Our responsibility under the law is to undertake an impartial investigation and, at the same time, encourage all sides to reach an agreement, where appropriate, through conciliation. The law requires us to complete our investigation within 100 days of the date of the official filing of the complaint. If we are unable to meet the 100-day requirement for issuing a determination, the law requires that we notify you and the respondent(s) and explain the reasons why the investigation of the complaint is not completed.

In handling this complaint, we will conduct an impartial investigation of all claims that the Fair Housing Act has been violated. If the investigation indicates that there is not evidence establishing jurisdiction, the case will be dismissed. At any point, you can request that our staff assist you in conciliating (or settling) this complaint with the respondent(s). If the case is not resolved, we will complete our investigation and decide whether or not the evidence indicates that there has been a fair housing violation. If the parties involved have not reached an agreement to settle the complaint, the Department will issue a determination as to whether there is reasonable cause to believe a discriminatory housing practice has occurred.

If our investigation indicates that there is reasonable cause to believe that an unlawful discriminatory housing practice has occurred, the Department must issue a charge. If the investigation indicates there is no reasonable cause to believe that discrimination has occurred, the complaint will be dismissed. In either event, you will be notified in writing.

If the determination is one of reasonable cause, the notification will advise you and the respondent(s) of your rights to choose, within 20 days, whether you wish to have the case heard by an Administrative Law Judge, or to have the matter referred for trial in the appropriate U.S. District Court.

Under federal law, even if the Department dismisses the complaint, you still have the right to bring an individual suit under the Federal Fair Housing Law. You may file your lawsuit in an appropriate federal, state or local court within two years of the date of the alleged discriminatory practice or of the date when a conciliation agreement has been violated. The law does not count, as part of the two-year period, any of the time when a proceeding is pending with the Department. You also have the legal right to file a lawsuit in court, even if your complaint formed the basis for a charge, as long as an Administrative Law Judge has not started a hearing on the record with respect to the charge.

There may be other applicable federal, state or local statutes under which you and/or the respondent(s) may initiate court action. You may consult a private attorney in this regard.

Acceptance Letter

HUD Case No. 02-18-9387-8

Rent increase or the Lease Renewal.
I am a Boni-fide mitchelle LAMa Tenant
have been renting My Apt. since march 1,
Building converted to Condop IN 2015 bu
other tenants remain as renters und
Affordability Plan. Landlord musta
all original renters living in building b
an income Affidavit and use that t
ON any rent increase. Landlord
to provide me with an income Affic
Proceed to illegally increase ren
many inquiries then I got Affida
2014 but NOT 2013 I maild by
mail before deadline but they sent
5 wks later after I maided.
DHCR but got no help. I also did
Person and made receptionist sign receipt
and they Fire Hire Property Mgr gave me ga
For 2015 so landlord Fire For doing his Job
richelle Neufville has not Renew lease foro
but I remain in Apt legally. Then my rent w
from $1,712.35 to $2,127.27 illegally not
my income. Landlord & Staff payoff deliv
Won deliver some mails & return my incom
my income hid after mailing. I don't have any
weeks after mailing

I am also refused maintenance to my apartment. In addition, landlord staffs caused a lot of damage to my apartment and refused to fix that as well. Furthermore, Super - Zeltser randomly turned off my water every week claiming they're fixing pipes. Sometimes I have water but no hot water or heat and on several occasions my electric and gas were turned off but I received no prior notice stating needed repairs only when it's for the entire building, then I get a email blast or news letter.  For the last 2 years I had no peace in my home because of the construction noise in building and GUT RENOVATION ripping up floors, knocking down walls, drilling, nailing, knocking and pounding in apartment above mine which started on March 1, 2016 to present Monday – Saturday 7:30 am – 5 pm and some Sundays. Management claims apartment construction is finish but I still hear it early mornings and when I come home at night and weekends which means share holder/tenant is doing their own construction or management lied again.

I have been harassed, terrorized and tortured by the Super Mark Zeltser and Richelle Neufville. Zeltser attacked me in basement hallway, cornered me and got into my face demanding to enter my apartment when I am not home. I was not physically harmed so there's no police report but I'm sure it's on surveillance camera which I believed kept the super from getting physical. I took time off from work so I am home when super and handyman entered my apartment because they claim pipe in my apartment is connected to above apartment. They cut hole in my wall and I could hear workers talking in apartment above, then I recognized super's voice who said "I'll give her something to complain about." Immediately there was a flood of water came down my walls flooding my apartment with all the urine and feces from toilet above into my apartment which caused a huge damage to walls and floor, which had to be repaired. It took 2 weeks with me taking off more time off from work costing me a loss of $1,500 in income which I couldn't make-up because someone else did the job.  The smell was unbearable.

Another time, there was more damage to my apartment in the bathroom ceiling and walls water leaking which got worst each week. I reported it to management, the handyman came inspected my apartment and the apartment above mine. He found the problem and said it was caused by a shower and toilet installment in apartment above mine. In addition, it also caused mold in my bathroom ceiling and walls. Weeks went by which turned into months but no repairs were made. Each handyman said they'll do the repair but can't without a work ticket which the Super and management has to authorize because damage is caused by the construction with outside contractors hired by the building and Super. So I complained to HPD but nothing was fixed and they had to pay a $300 fine. Still no repairs and I suffered through the horrible condition in my home for months. I went back to HPD who sent another inspector who issued 6 violations and said I should go to court which I did. Landlord still made no repairs and landlord was in contempt and paid another fine of $1,680.00 for the 6 violations but no repairs were made. I went back to HPD court again and this time judge issued a final agreement between me, HPD attorney and landlord's attorney carried a $25,000 fine and the major repairs were made but 2 needed repairs are still pending.

Richelle Neufville has a big arrogant ego, became furious that the court order over-rides hers, so she continues to harass and threaten me with the most recent incident occurring

2

certified mail receipt to small claims court mediator and landlord's attorney and the
mediator determine that I have a case for 2014 but can't do anything about 2013. An
agreement was made with the 3 of us which states that "landlord attorney – Angelo
Ficarrotta would setup a date with property manager – Richelle Neufville to go over the
breakdown numbers of overcharge rent and return to court in 3 weeks. However, property
manager wouldn't meet with me or return my emails and phone calls.

When I return to court Neufville and Pais were there and I went over the numbers with
Neufville, court mediator and landlord's attorney but the landlord had the final say and
refused any agreement. While in court speaking with the mediator, Pais and Neufville
had a slip of the tongue and said they sent out 2016 income affidavit. I was surprised and
responded I haven't received anything as of yet. Which means it was their intention to not
include me again like 2013. 10 days later I received at my door the 2016 income
affidavit, news letter stating that there was a prior notice stating another increase 1.25%
increase and additional income adjustment of 5% but no lease renewal was accompanied
which is supposed to be with the affidavit. Also, I never got any prior notice.

I replied with the completed income affidavit notarized, income tax return for 2016 and a
letter stating that I never got a prior income increase notice or lease renewal. I sent it by
certified mail with request for return signed receipt which came back 10 days later
10/11/17 with a very shady signature and an incomplete date of receipt which is still 2
days before deadline. But this was evidence of mail fraud and proof that they claim they
never got it or it came after deadline. However, I went online and saw that it was
delivered on 10/10/17 and printed the tracking evidence before it could be deleted. It is
unbelievable the illegal measures the staffs and mail-man will do. Whatever they're being
paid may or may not be enough to bail them out of jail which is where they belong.

I hope and pray that I will get the justice I seek and to protect this from happening to
other tenants. I've heard stories about what happen to senior citizens and it's happening
to me an educated young woman. What's even more shocking is that some of the staffs
are from a minority group and don't live in the building but engage in treachery. It's
about money in their pockets from scamming, deceit, lies, jealousy and fraud. On the
other hand it's racketeering, bribery, extortion and hate crime from landlord and
management

I put my sincere trust in HUD to receive a fair trial and justice, not just for me but for all
the other tenants who may not have the stamina to fight for their right. It is because of the
many brave people who have fought for the Civil Rights Act of 1968 and 1988 that I am
able to make this complaint and look forward to a speedy solution.

Thank you for your time.

Regards,

Carol Commissiong

Carol Commissiong

4

Case Name: Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC, et al.

Case 1:19-cv-06327-V9337-8  Document 5  Filed 10/10/19  Page 48 of 110

12. Complainant states that sometimes, she doesn't have hot water. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

13. Complainant states that construction in other apartments has damaged her apartment. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

14. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding the construction in upstairs non-rental apartment causing damages to downstairs rental apartment.

15. Complainant states that Management is constantly harassing her to enter her apartment due to construction, upsetting her life. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

16. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding entering the rental units due to construction.

17. Complainant states that Respondents won't make repairs to her apartment. Please specify the occasions from January 1, 2017 to the present and provide the witnesses and/or supporting documentation.

18. Complainant states that HPD inspected her apartment and issued 6 violations. Please provide a copy of the six violations.

19. Complainant states that no repairs were made to her apartment even though a judge ordered the repairs. Please provide a copy of the judge's order.

20. Complainant states that Respondent landlord would rather pay the fines because his intention is to get Complainant out. Provide the supporting documentation.

21. Provide Carol D. Commissiong's landlord's and/or its managing agent's policy and procedures regarding repairs.

22. Provide copies of all written requests for repairs from Complainant to her landlord and/or its managing agent from January 1, 2017 to the present, and the responses to those requests.

23. Provide the names and contact information of those individuals who made the decision not to conduct repairs in Complainant's apartment.

24. Explain why you named Mark Zeltser Superintendant as Respondent. Specify all the dates and occasions of these events from January 1, 2017 to the present. Clearly describe what happened on each day, and what Mark Zeltser and/or other maintenance workers did to you on each occasion. Provide the witnesses and/or supporting documentation.

Case Name: Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.
Title VIII No. 03380-9355
Case 1:19-cv-05839-LGS   Document 3   Filed 10/10/19   Page 49 of 110

34. You allege that you suspect that here has been unauthorized entry to your apartment because vital documents were stolen. Provide the witnesses and/or supporting documentation, including any police reports.

35. You allege that you replied with the completed income affidavit notarized, income tax return for 2016 and a letter stating that you never got a prior income increase notice or lease renewal. You allege that you sent it by certified mail with request for return signed receipt which came back 10 days later 10/11/17 with a very shady signature and an incomplete date of receipt which is still 2 days before deadline. You went online and saw that it was delivered on 10/10/17 and printed the tracking evidence before it could be deleted. Provide the witnesses and/or supporting documentation.

36. Please explain why you believe that Respondents double billed you, added excess charges to your rent, refused to renew your lease, and refused to make repairs in your apartment, because of your sex, race and national origin.

37. Please provide any additional information you deem relevant to this complaint investigation.

**Case Name:** <u>Commissiong, Carol D. vs. Mark Greenberg Real Estate Co. LLC. et al</u>.
Title VIII No. 02-18-9387-8

## DATA REQUEST

1. I am black, African American mixed with Scottish and Irish. I am an American citizen born in the Caribbean, Jamaica, West Indies and live in New York most of my life.

2. Carol D. Commissiong moved into her apartment at 555 Main Street, Apt. # 1302 New York, NY 10044 on March 1, 2000. A copy of new lease is attached in this package. However, the original lease is not available because it was stolen from my apartment along with other vital documents by the landlord's staffs; as stated in the HUD 903 complaint form. Management and superintendent have keys to my apartment but they are not allowed to enter my apartment without my authorization. They have requested entry to my apartment during my absent but I did not allow that because the superintendent Mark Zeltser is evil and the property manager Richelle Neufville is a wicked WITCH. I never ever signed the paper they sent repeatedly requesting to enter my apartment in my absence. I'm always present during all repairs, inspections and installation.

3. IH Preservation Partners LLC – David B. Hirschhorn and director of property management Steven Greenbaum did not provide an income affidavit for 2012 and 213 or lease renewal for the period 10/01/2014 – 9/30/2015. During this time there was no property manager so Greenbaum was in charge of the property manager duties, hiring and firing. By law the landlord must provide all Bona-Fide Mitchel Lama tenants a lease renewal with 60 – 90 days notice before current lease expiration date and an income affidavit to determine if there should or shouldn't be any rent increase. My rights were violated. Richelle Neufville is responsible for the period 10/01/16 through 09/30/18.

The building was in the process of withdrawing from the Mitchel Lama program in 2014. Any tenant wishing to purchase their apartment had to provide their 2012 income and financials, so only intended purchasers were required to show financials. No one had a lease and the old one was resolved. I received a rent increase of 1% = $18.88 on my monthly bill but no income affidavit or lease renewal for the period 10/01/2014 through 9/30/2015. Then in May 2015 I got an additional increase of 5% for same year making it 6% plus additional 7 months retro-active charge for October 2014 – April 2015. I called office and was told the property manager Jennifer Jones no longer worked there and Sheila Rudula took her position and wasn't able to do anything about a lease renewal or the additional 5% increase. Rudula was a family friend filling in temporary a neighbor told me. Also at this point no one had a new lease or at least I didn't and the old lease was not valid according to Greenbaum and tenants who had a conversation with him at the tenant association meetings.

In July 2015 a new property manager name Adrian Coyac was hired with a welcoming party which some tenants attended but I didn't. However, I spoke to Mr. Coyac on the phone about the increase and lease renewal. He sent me two lease renewal forms for the period 10/01/2014 through 9/30/2015 on June 20, 2015 which I signed and return to the

1

Carol Commissiong
555 Main Street
Apartment # 1302
New York, NY 10044
carolcommissiong@gmail.com

US Dept. of Housing Development
New York State Office
Jacob K. Javits Federal building
26 Federal Plaza
New York, NY 10278-0068

Ms. Jo-Ann Frey:

SUBJECT: <u>Carol Commissiong vs. mark Greenberg Real Estate Co. LLC., et al.</u>
          Title VIII No. 02-18-9387-8

I am in receipt of your DATA REQUEST and I am responding within 10 days or receipt.
The letter is dated March 14, 2018 with a claim of regular and certified mail sent.
However, I only received regular mail but no certified mail.

However, I did receive a certified mail dated February 28, 2018 3 weeks ago but I didn't
sign for it, it was in my mail box. I have not authorized anyone to sign for me. I asked the
doorman Danny that was on duty at the time if he signed for me but he said he didn't. So,
I am assuming that the mail delivery man Rafael signed it himself because his initials RS
is found on the envelope. This is an acceptance letter response to my inquiry # 548978
complaint against Mark Greenberg Real Estate Co. LLC. from Jay Golden, Region II
director for Office of Fair Housing and Equal Opportunity.

I would like to know whose name is on the postal signed receipt. In addition, I have not
received a response to my complaint against IH Preservation Partners LLC. If a response
was sent I have not received it.

In regards to the data request, I answered each question by number and order received. I
labeled each document with the number of the question. Some documents are answer to
more than one question and are labeled with more than one number. It took time
gathering evidence, coordinating and making copies.

I look forward to your response in a timely manner.

Regards,

Carol Commissiong

**Case Name:** <u>Commissiong, Carol D. vs. Mark Greenberg Real Estate Co. LLC. et al.</u>
<div align="center">Title VIII No. 02-18-9387-8</div>

<div align="center">

## DATA REQUEST

</div>

1. I am black, African American mixed with Scottish and Irish. I am an American citizen born in the Caribbean, Jamaica, West Indies and live in New York most of my life.

2. Carol D. Commissiong moved into her apartment at 555 Main Street, Apt. # 1302 New York, NY 10044 on March 1, 2000. A copy of new lease is attached in this package. However, the original lease is not available because it was stolen from my apartment along with other vital documents by the landlord's staffs; as stated in the HUD 903 complaint form. Management and superintendent have keys to my apartment but they are not allowed to enter my apartment without my authorization. They have requested entry to my apartment during my absent but I did not allow that because the superintendent Mark Zeltser is evil and the property manager Richelle Neufville is a wicked WITCH. I never ever signed the paper they sent repeatedly requesting to enter my apartment in my absence. I'm always present during all repairs, inspections and installation.

3. IH Preservation Partners LLC – David B. Hirschhorn and director of property management Steven Greenbaum did not provide an income affidavit for 2012 and 213 or lease renewal for the period 10/01/2014 – 9/30/2015. During this time there was no property manager so Greenbaum was in charge of the property manager duties, hiring and firing. By law the landlord must provide all Bona-Fide Mitchel Lama tenants a lease renewal with 60 – 90 days notice before current lease expiration date and an income affidavit to determine if there should or shouldn't be any rent increase. My rights were violated. Richelle Neufville is responsible for the period 10/01/16 through 09/30/18.

The building was in the process of withdrawing from the Mitchel Lama program in 2014. Any tenant wishing to purchase their apartment had to provide their 2012 income and financials, so only intended purchasers were required to show financials. No one had a lease and the old one was resolved. I received a rent increase of 1% = $18.88 on my monthly bill but no income affidavit or lease renewal for the period 10/01/2014 through 9/30/2015. Then in May 2015 I got an additional increase of 5% for same year making it 6% plus additional 7 months retro-active charge for October 2014 – April 2015. I called office and was told the property manager Jennifer Jones no longer worked there and Sheila Rudula took her position and wasn't able to do anything about a lease renewal or the additional 5% increase. Rudula was a family friend filling in temporary a neighbor told me. Also at this point no one had a new lease or at least I didn't and the old lease was not valid according to Greenbaum and tenants who had a conversation with him at the tenant association meetings.

In July 2015 a new property manager name Adrian Coyac was hired with a welcoming party which some tenants attended but I didn't. However, I spoke to Mr. Coyac on the phone about the increase and lease renewal. He sent me two lease renewal forms for the period 10/01/2014 through 9/30/2015 on June 20, 2015 which I signed and return to the

<div align="right">1</div>

office. I received back a signed copy but no income affidavit for 2013 or any rent over-charge reduces adjustment. I spoke with Coyac by telephone who informed me that the landlord isn't going to change his mind about the rent increase. Unfortunately, Mr. Coyac was fired for doing his job by providing me with a lease renewal. He also renewed other tenants lease. **The landlord is trying to price bona-fide Mitchel Lama Tenants out of their homes illegally; when they default on the rent overcharge he takes them to court to evict them from their apartment. This is public record, see the list: Frank Farance, Stephen Kroculik, Yvonne Acosta, Sandra Maddey, Maria Colici, Mara Lusitano, Hassan Adan, Edouard Ombele, Richard Leopold, DominikaWronska, Enrique Canales, Jill Burk, Hong Jun Guan, Sharon Bermon, Christian Sglimbea, Tamara Knezevic, Lloyd Woltz, Snezana Rauski, Chime sangmo and Arlino Andrade just to name a few.**

Next I went to DHCR asked to see the rent-roll for my building 555 Main Street but they didn't give me anything. I was given the run-around and sent to the DHCR Queens office but they didn't help me either. That's why I filed an Article-78 in Supreme court and have a motion on 4/4/18. (Docs) The current property manager Neufville did not provide a lease renewal for the period 10/01/2016 - 9/30/2 017 and 10/01/2017 – 9/30/2018. Neither did she or Alicia Pais provide with an income affidavit for 2016. While I was in court they accidently had a slip of the tongue and mentioned during a conference with me, court mediator and landlord's attorney that they sent out 2016 income affidavit. I was surprised and said I haven't received anything. Then two weeks later I received it at my door but didn't get a lease renewal. (Docs)

4. This information is found in my lease and the Affordability Plan which is the amendment to my lease. (Docs)

5. The excess charges are on-going since 2009 but became more severe in 2012 with outrageous late fees every month making ridiculous charges. Small claims court doesn't have the power to reduce or remove these overcharges or make landlord renew lease or lower rent. For this reason I sort help from DHCR who has the power. The small claims court doesn't have the power to discipline against discrimination or for not making repairs and maintenance. That's why I'm seeking help from HUD who has jurisdiction for discrimination and HPD who has jurisdiction to discipline landlords for neglect and not making repairs. I won my case in Housing Court and repairs were made but what about future repairs? There's a current repair pending and it's been 2 weeks since I reported it. (Docs)

6. This information is found in my lease and the Affordability Plan which is the amendment to my lease. The Affordability Plan mirrors rent stabilization laws and landlord must provide every Bona-Fide Mitchel Lama tenant with an income affidavit and a lease renewal every year 60-90 days before current lease expires. (Docs)

7. Richelle Neufville was hired to specifically to get rid of all rental tenants using all means and force necessary even if it means breaking the law, she's a butch bully. Neufville and Pais are responsible for sending tenants the lease renewal and income

2

affidavit. When I didn't get one in 2014 that was Pais fault. Clark and Jackson use the information they receive from Hirschhorn, Greenbaum, Neufville and Pais to do the billings. However, it is up to the staff to do what is ethically right. The final criminal act is of their own doing. Whereas, previous property manager Jennifer Jones chose not to do wrong at Hirschhorn's unethical command which resulted in her resignation after 8-9 years managing Island House/555 Main Street building of 400 apartments. Coyac was let go after 2 months for doing what's right. The administrator John Falvo was also let go/fired because he signed my receipt request as proof that I submitted my 2015 income affidavit. The staffs are threatened with their job as collateral to commit a crime. **Neufville is a big butch bully using her authority to intimidate, harass and threaten me ongoing.**

8. The electricity was turned off on 4 different occasions in 2016 and 2017 but I can't remember the exact dates. Electricity is included in my rent. Landlord installed meter so he can charge a separate bill for electric but he lost in court and the electric and rent is on same bill. Electric was out for 4 hours and I had to take off from work to be home on 2 different occasion for installation. Then management had another installment to activate individual billing which is illegal. They're preparing for my move-out which will never happen. There was a third time where the electricity was out for 10 hours in the entire or partial section of the building. Newsletter said it was electricity upgrade . . . I lived here for 18 years and never had a problem with electric except for 2002 when the entire NYC had no electric. However, my individual electric was turned off for whatever reason I don't know but it was to aggravate me and upset the enjoyment of my home.

The gas was turned off several times and the most recent was in March 2018 from evening to morning for another gas upgrade the newsletter e-mail said. No cooking or using the laundry room was allowed.

9. Management and landlord have no policy for this except for emergency. Lease explains and a copy of lease is attached. (Docs)

10. The water in my apartment was shut off very often due to construction in apartment above mine under-going a gut renovation. This was a nightmare for 18 months, no water and when I had water it was freezing cold, no hot water. I had no prior notice, sometimes the doorman would call me on intercom with a 15 minutes warning because it was just my apartment. Sometimes when it's partial or entire building water shutdown I get a newsletter. This is an on-going problem. However, I must say since November 2017 I haven't had any problems with hot water or water shut off. I also noticed the superintendant has not been working here since either but he still live in the building. Unfortunately, I have no document or witness of this, just my word. (Docs)

11. There's no policy other than emergency, see lease. (Docs)

12. It happened just about every week for 18 months 2015 – 2017 but not since there's a new superintendant Joshua Singh who was the assistant super and handyman.

3

13. I can't remember exact dates but it happened in 2016 and 2017. I took landlord to Housing court and won my case and all repairs have been completed as of March 16, 2018. It was a long battle with repeated court appearances and serving papers and taking off from work. There's a new minor repair rising from previous damage to floor and hope it will be taken care of soon.

14. There really isn't any procedure other than notifying residents with a newsletter. Construction should only take 3 months per apartment but the one above mine took 18 months starting March 1, 2016.

15. The many times were countless and unprofessional. Particularly, when Mark Zeltser attacked and cornered me in the basement hallway. When I took off from work to accommodate request letter from Richelle Neufville, Zeltser intentionally flooded my apartment with toilet upstairs after cutting a huge hole in wall to get to the pipes. A portion of my floor had to be re-done. I had to take off more time from work and it took 2 full weeks to repair the floor and wall but they didn't make any of the necessary repairs. My floor looks like a Zebra with 2 different color tiles. Then in June 2017 there were more damage to my ceiling and bathroom walls and ceiling due to installment of a shower in apartment above mine. Hirschhorn, Greenbaum, Neufville and Zeltser refused to make repairs. So I went to HPD who issued 6 violations and a fine of $350. Then I filed case in Housing Court for repairs and won my case. Judge Wendt ordered landlord to make repairs and HPD put a lean on the building for $1,680.00. When landlord didn't make repairs I returned to court and this time landlord was faced with a lean of $25,000 if no repairs were made by set date so finally he complied and repairs were made. (Docs.)

16. There's no policy just my lease agreement. My lease is dated 2014 but none of the tenants received it until August 2014 which expired in 2 months. So it's not really an agreement but take-it or leave-t by moving out which favors landlord. But no-one moved. Please see newsletter attached. (Docs)

17. The landlord would not make repairs or maintenance so I reported it to HPD who issued 6 violations $300 fine then a $1,680 fine when I reported it in HPD court then landlord was in court contempt and faced a $25,000 which he avoided by making the repairs. However, there's currently a minor repair that was reported 10 days ago that's pending. This is due to the damage on floor strip not corrected properly.

18. Documents will show the 2 violations $300 and the 6 violations $1680 fines.

19. Court papers show this. (Docs)

20. Court papers show this. (Docs)

21. Repairs are requested by calling the office or enter information online through building link system.

4

22. There's no written response, I'm ignored. When I see handyman in hallway I asked when will repairs be made and he said, "when he gets a work ticket from the super." However, superintendant Mark Zeltser ordered handymen not to make repairs. I'm not sure if upper management and/or landlord Hirschhorn ordered him not to or if it was his own brutality. All I know is he no longer works here but still live in the building.

23. I believe, Mark Zeltser, Richelle Neufville, and Steven Greenbaum are all obeying David B. Hirschhorn direct orders. However, Mark Zeltser did some very malicious things of his own free will because no one held a gun to his head and made him do it. Zeltser flooded my apartment on purpose which cost the landlord to fix the damage. Same goes for the rest of the staffs. Everyone must be held accountable for their own unethical actions. No one is above the law. There's so much more but the investigation is from January 2017.

24. Well, the first time Mark Zeltser attacked and cornered me was around September 2016 but he didn't physically touch me because of the building surveillance camera. I reported incident to management who did nothing. From that moment on Zeltser gave me hell with dirty looks and talks bad about me to the building staffs. I remember one day he had altercation with a male resident on the 19th floor and the doorman Roland Rameshwar told him to calm down and don't let it get to him. So it is obvious I am not the only resident being harassed, terrorized and tortured by the unbearable constant noise of construction and ill-treatment from management staffs.

25. The last lease renewal was from 10/01/2015 to 9/30/2016. Neufville started working for Mark Greenberg Real Estate Co. LLC 545 Main St. on January 2016 and is in charge of all lease renewal under Steven Greenbaum direction and Hirchhorn orders. I didn't received a renewal for the periods 10/01/16 – 9/30/17 and 10/01/17 – 9/30/18. I continued to pay rent as usual which is accepted. I never got a response to my certified letter or a lease renewal. (Docs)

26.  The mail deliveryman name is Rafael and his initials are on the certified return receipts as RS. H e accepts bribes $$$ from staff – Alicia Pais for returning or delaying mails. The evidence speaks louder than words. (Docs)

27. I went to DHCR 8 times in 2015, 2016 and 2017 is when I filed a petition/order to show cause (Article 78) and sent a copy to landlord who raised hell against me by telling his staffs to do the un-thinkable but I won't back down. Only death can stop me and I am not afraid of death. I will continue to fight for my right just like Dred Scott did, no matter how much obstacles Hirschhorn and his clan put in my way. (Docs)

28. Article 78 (Docs)

29. Since I reported the attack in 2016 Zeltser just gave me dirty threatening looks when we see each other in the building. On one occasion in the lobby I was talking to the handyman Joshua about the needed repairs in my apartment then all of a sudden Zeltser came out of office and started yelling and screaming at Joshua because we were talking.

Zeltser was carrying-on like a hoodlum in the ghetto, disrespecting Singh as if he was a child and acting like a beast. But he didn't scare me, Singh walked away like a little puppy who got spanked. Well, today Joshua Singh is the current superintendent and he is the one who made the repairs the sink and bathroom ceiling and walls.

Zeltser and Neufville and some workmen that's doing the construction on apartments for sale came to my door un-announce ringing doorbell and knocking in October 2017 demanding access so they can make an estimate for renovation and sale of my apartment. I was busy getting ready for work and didn't let them in because there was no prior notice and I have no intention of moving out of my home.

While handymen were making repairs, Neufville came to my door on January 19, 2018 10:25 a.m. and tried opening my door. I was sitting at my computer in livingroom and asked "who is it?" then she ring the doorbell. I open the door and ask what she wanted. She said she wanted to see what Joshua was doing who was in the bathroom taking measurements. I told her she's not coming into my apartment and she told me she had the right to because I'm just renting. I told her she's not ever coming into my home and locked my door. Few minutes later, Joshua came to me and said he had to get some tools from downstairs, so I let him exit and locked the door behind him. He came back with the handyman to work on the bedroom floor while he worked on the bathroom sink and walls removing mold. They left for 1 ½ hours maybe for lunch or work on another apartment or both and came back 1:42 pm to finish repairs.

While they were gone, Neufville came back a second time while I waited for the men to come and finish the job. This time Neufville was very aggressive banging and kicking my door demanding that I open up and let her in but I didn't. I told her she's harassing me and that if she didn't go away I will call the police. On that note, she left. There was another time in 2017 at the Roosevelt Island subway she tried to intimidate me with her butch look but she didn't succeed because I ignored her and went about my business. I wasn't about to lower myself to her level.

30. All the HPD violations and court papers are attached. (Docs)

31. On Friday 1/19/18 as stated in the court papers if you can read the judge hand writing which states repairs are to be made on 1/19/2018 between the hours 9 am to 4pm. Neufville came to my apartment twice same day demanding entry with a long stick in her right hand which I perceived as a weapon as she threaten me saying she have the right to enter my apartment because I'm just renting. I told if she didn't leave, I will call the police. The stick looks like the one high-priest carries or the one Moses used and turned into a serpent in Egypt, if you're familiar with biblical history. (Docs)

32. I live alone so there's no witness. However, when I do laundry and speak to other residents in the building I hear stories. When I search housing court records I see the names of resident who are renting and didn't buy their apartment that landlord is trying to evict. This is public record and anyone can search using only the computer in housing court at 111 Centre Street 2nd floor. I checked this computer every chance I get because

6

landlord could say he send me notice which I never get because I would show up in court to defend myself because judge would say, "she's not here" and rule against me with an eviction. Because Alicia Pais pays mail deliveryman-Rafael not to deliver mail or prolong the delivery. This is what's happening to me and other residents at 555 Main Street. I can only prove my case with the documents. (Docs)

33. Yes, document mailed and returned are attached, no witness just proof. (Docs)

34. There's no witness or police report but a lot of files I left on my desk are missing which includes court papers, original lease, postal receipts and other papers. Only when I need something then I realize it is missing. Only the landlord/management has keys to my apartment, I don't have guests over, and only the handymen have been to my apartment for repairs while I'm present. There's no police report but the next step is to file a case against the postal deliveryman Rafael and Alicia Pais because this is a federal offense. The proof is very clear.

Only Neufville and super demanded to enter my apartment when I'm not home to do the unthinkable. And since  Neufville is so desperately hard-up to enter my home when I'm not home I find her guilty, guilty, guilty.

35. The documents are attached as proof. (Docs)

36. Why? Because of greed and he's a racist. Hirschhorn is like Jim Crow. Just look at the list of resident names Hirschhorn is suing for eviction, you can guess their ethnicity by the name. I don't know these people but they live in the building and landlord is illegally trying to get them out of their apartment so he can sell it for a profit. Extortion. Once Pais and Neufville do the dirty work he will replace them with Caucasian staffs.

37. Please take note that my lease was renewed on 2/28/12 with management for the period 3/1/2012 – 2/28/13 with no increase. But landlord increased rent without merit just greed an additional $102.74 from $1,712.35 to $1,815.09. Then another increase was added in the amount $72.60 = $1,887.69. All tenants did not get the new lease until August 2014 which expired in 2 months with another increase.

Notice the letter that came with new lease dated June 24th, 2014 RY Mgmt. Co. Inc. states in 6th paragraph that <u>Accordingly, no tenant will be required to pay the income adjustment for the lease year October 1, 2013 to September 30, 2014.</u> However, as you can see on lease cover page I was charged an additional adjustment of $174.88 even though my income reported didn't allow for an increase adjustment in either year.

Documents are labeled with each question number for your reference.

Sincerely,

*Carol Commissiong*

Carol Commissiong

7

**CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000**

| MONTH | YEAR | RENT BILLED | RENT PAID | <u>RENT ACCORDING to INCOME</u> | OVER PAID |
|-------|------|-------------|-----------|------------------------------|-----------|
| March | 2008 | $1,499.09 | $1,499.09 | **$1,499.09** | $0 |
| February | 2009 | $1,499.09 | $1,499.09 | **$1,499.09** | $0 |

**NEW RENT INCREASE STARTED 03/01/2009 AMOUNT 7.75% $116.95 = TOTAL $1,616.04. ACCORDING TO INCOME THERE SHOULD ONLY BE A <u>1% INCREASE $14.99 + $1,499.09 = $1,514.08</u> NOT $1,616.04.**

| March | 2009 | $1,616.04 | $1,616.04 | **$1,514.08** | $101.96 |
|-------|------|-----------|-----------|---------------|---------|

**AFTER JUST 31 DAYS (1 MONTH) MANAGEMENT/LANDLORD POST ANOTHER INCREASE OF 6% = $96.31 TOTAL $1,712.35 AND SAID BUILDING WAS GOING THROUGH A MAJOR CAPITAL IMPROVEMENT (MCI) HOWEVER, MCI INCREASE SHOULD ONLY BEEN 2% $30.28 INCREASE BECAUSE OF MY <u>INCOME UNDER MITCHELL LAMA LEASE AGREEMENT</u> TOTALING $1,544.36 NOT $1,712.35. THERE WAS AN ADJUSTMENT 13.75%/$213.26 INCREASE IN A MONTH FROM $1,499.09 TO $1,712.35. <u>THAT'S 10.75% = $167.99 MORE THAN THE 3% = $45.27</u> INCREASE INCOME ADJUSTMENT ALLOWED. <u>NY RENT GUIDELINE LAW CLEARLY STATES THAT RENT AND MCI INCREASE MUST NOT EXCEED 6%.</u>**

**For reference see** Management's Resident Ledger: EXHIBIT # 1

| April | 2009 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
|-------|------|-----------|-----------|---------------|---------|
| **May 2009 - 02/28/2012** | | **$1,712.35** | **$1,712.35** | **$1,544.36** | **$5,711.66** |
| March | 2012 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
| April | 2012 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
| May | 2012 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
| June | 2012 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
| July | 2012 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
| August | 2012 | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |
| September 2012 | | $1,712.35 | $1,712.35 | **$1,544.36** | $167.99 |

**CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000**

**NEW INCREASE STARTED ILLEGALLY BEFORE LEASE EXPIRES 02/28/2013 6% AMOUNT $102.75. ACCORDING TO INCOME THERE SHOULD ONLY BE A <u>1% $17.12 INCREASE</u> = STARTING 03/01/13 WHEN EXPIRED 02/28/2013 NOT BEFORE!!** See Lease Renewal 3/1/2012 – 2/28/2013: EXHIBIT # 2

| MONTH | YEAR | RENT BILLED | RENT PAID | <u>RENT ACCORDING to INCOME</u> | OVER PAID |
|---|---|---|---|---|---|
| October | 2012 | $1,815.09 | $1,815.09 | **$1,544.36** | $270.74 |
| November | 2012 | $1,815.09 | $1,815.09 | **$1,544.36** | $270.74 |
| December | 2012 | $1,815.09 | $1,815.09 | **$1,544.36** | $270.74 |
| January | 2013 | $1,815.09 | $1,815.09 | **$1,544.36** | $270.74 |
| February | 2013 | $1,815.09 | $1,815.09 | **$1,544.36** | $270.74 |

**NOW THAT THE LEASE AGREEMENT EXPIRED ON 2/28/2013 THE LANDLORD IS ALLOWED A NEW RENT INCREASE STARTING 3/01/2013 WHICH SHOULD HAVE BEEN AJUSTED ACCORDING TO INCOME 1% = $15.44 + $1,544.36 TOTAL $1,559.80 ON THE NEW LEASE STILL UNDER THE MITCHEL LAMA PLAN BECAUSE BUILDING IS STILL 100% RENTAL NOT YET COOP OR CONVERTED TO THE AFFORDABILITY PLAN. HOWEVER, TENANTS NEVER GOT THE NEW LEASE UNTIL JULY 2014 WHICH EXPIRED SEPTEMBER 2014 WITH ANOTHER INCREASE**

| | | | | | |
|---|---|---|---|---|---|
| March | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |
| April | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |
| May | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |
| June | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |
| July | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |
| August | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |
| September | 2013 | $1,815.09 | $1,815.09 | **$1,559.80** | $255.29 |

**RESIDENTS RECEIVED A LETTER DATED 06/24/2014 WITH TWO (2 copies) NEW LEASE FROM MANAGEMENT and LANDLORD OWN WORDS,** "<u>Accordingly, no tenant will be required to pay the Income Adjustment for the lease year October 1, 2013 to September 30, 2014.</u>" SEE EXHIBIT # 3

**CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000**

HOWEVER, AS YOU CAN SEE I WAS BILLED AN ADDITION <u>4% $72.60</u> INCREASE WHICH I PAID IN FULL

WHILE OTHERS TENENTS WERE NOT.  PLEASE TAKE NOTE THAT THE NEW LEASE IS DATED 10/01/2012

– 09/30/2014 WHICH IS APPROXIMATELY TWO YEARS BEFORE RECEIVING IT WHICH IS AN

ACCOUNTING VIOLATION. SEE NEW LEASE COVER PAGE - EXHIBIT # 4

| MONTH | YEAR | RENT BILLED | RENT PAID | <u>RENT ACCORDING to INCOME</u> | OVER PAID |
|---|---|---|---|---|---|
| October | 2013 | $1,559.80 | $1,887.69 | **$1,559.80** | $327.89 |
| November | 2013 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| December | 2013 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| January | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| February | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| March | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| April | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| May | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| June | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| July | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| August | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |
| September | 2014 | $1,887.69 | $1,887.69 | **$1,559.80** | $327.89 |

NEW INCREASE STARTED 10/01/2014 1% AMOUNT $18.88 TOTAL $1,906.57. ALTHOUGH THE 1%

INCREASE IS CORRECT, $18.88 IS INCORRECT BECAUSE IT WAS BASED ON ($1,887.69) WHICH SHOULD

HAVE BEEN BASED ON $1,559.80 WITH A CORRECTED AMOUNT OF $15.59 TOAL $1,575.39

| | | | | | |
|---|---|---|---|---|---|
| October | 2014 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |
| November | 2014 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |
| December | 2014 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |

**CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000**

| January | 2015 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |
| February | 2015 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |
| March | 2015 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |
| **MONTH** | **YEAR** | **RENT-BILLED** | **RENT PAID** | **RENT ACCORDING to INCOME** | **OVER PAID** |
| April | 2015 | $1,906.57 | $1,906.57 | **$1,575.39** | $331.18 |
| **May** | **2015** | **$660.73** | **$660.73** | RETRO-CHARGE | $660.73 |

**May 2015 RETRO-CHARGE 7 months billed from 10/2014 – 04/2015 $94.39 x 7 = $660.73 paid in full**

**10/01/14 - 10/01/15 an additional 5% $94.39 increase for same year total = $2000.96 THAT'S A TOTAL OF 6% INCREASE IN 1 YEAR NOT ACCORDING TO INCOME**

| May | 2015 | $2,000.96 | $2,000.96 | **$1,575.39** | $425.57 |
| June | 2015 | $2,000.96 | $2,000.96 | **$1,575.39** | $425.57 |
| July | 2015 | $2,000.96 | $2,000.96 | **$1,575.39** | $425.57 |
| August | 2015 | $2,000.96 | $2,000.96 | **$1,575.39** | $425.57 |
| September | 2015 | $2,000.96 | $2,000.96 | **$1,575.39** | $425.57 |

**NEW INCREASE STARTED 10/01/2015 5% = $100.04 AMOUNT $2,101.01 BUT ACCORDING TO INCOME INCREASE SHOULD HAVE BEEN 1% = $15.75 + $1,575.39 = TOTAL $1,591.14 NOT $2,101.01**

| October | 2015 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |
| November | 2015 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |
| December | 2015 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |
| January | 2016 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |
| February | 2016 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |
| March | 2016 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |
| April | 2016 | $2,101.01 | $2,101.01 | **$1,591.14** | $509.87 |

CAROL COMMISSIONG 555 Main Street Apt. # 1302 Roosevelt Island NY 10044          Page 4

# CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000

| MONTH | YEAR | RENT-BILLED | RENT PAID | RENT ACCORDING to INCOME | OVER PAID |
|---|---|---|---|---|---|
| May | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| June | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| July | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| August | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| September | 2016 | $$2,101.01 | $2,101.01 | $1,591.14 | $509.87 |

**I RECEIVED A 2015 INCOME AFFIDAVIT AT MY DOOR WHICH I SUBMITTED IN PERSON** SEE EXHIBIT # 3
**AT MANAGEMENT OFFICE WITH THE FRONT DESK CLERK JOHN FALVO, I ASKED HIM TO SIGN A**
**RECEIPT I TYPE-UP AS PROOF WHICH HE SIGNED. MY RENT WAS NOT INCREASED BECAUSE OF MY**
**INCOME SO NO ADJUSTMENT. HOWEVER, LANDLORD FIRED MR. FALVO FOR SIGNING MY RECEIPT. A**
**NEW LEASE RENEWAL SHOULD HAVE BEEN WITH THE INCOME AFFIDAVIT BUT LANDLORD HAD NO**
**INTENTION OF RENEWING MY LEASE WHICH HE MUST RENEW UNDER THE AFFORDABILITY PLAN.**

| | | | | | |
|---|---|---|---|---|---|
| October | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| November | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| December | 2016 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| January | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| February | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| March | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| April | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| May | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| June | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| July | 2017 | $2,101.01 | $2,101.01 | $1,591.14 | $509.87 |
| August | 2017 | $2,101.01 | $2,000.00 | $1,591.14 | $408.86 |

**CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000**

| September | 2017 | $2,101.01 | $2,000.00 | **$1,591.14** | $408.86 |

I OVER PAY RENT IN THE AMOUNT OF $30,366.69, THEREFORE, $30,366.69 SHOULD BE CREDITED TOWARDS CURRENT RENT BILLED. I COME UP WITH THIS FIGURE BY ADDING ALL OVER PAYMENT SEEN IN RED. FOR EXAMPLE: $101.96 ÷ $6,047.64 ÷ $1,353.70 ÷ $1,787.03 ÷ $3,934.68 ÷ $2,318.26 ÷ $660.73 ÷ $2,127.83 ÷ $11,217.14 ÷  $817.72 = $30,366.69

$167.99 MULTIPLY BY 36 MONTHS = $6,047.64

$270.74 MULTIPLY BY 5 MONTHS = $1,353.70

$255.29 MULTIPLY BY 7 MONTHS = $1,787.03

$3,934.68 = $327.89 MULTIPLY BY 12 MONTHS

$331.18 MULTIPLY BY 7 MONTHS = $2,318.26

$94.39 MULTIPLY BY 7 MONTHS RETRO CHARGE = $660.73

$425.57 MULTIPLY BY 5 MONTHS = $2,127.83

$509.87 MULTIPLY BY 22 MONTHS = $11,217.14

$408.86 MULTIPLY BY 2 MONTHS = $817.72

NEW RENT INCREASE STARTED 10/01/2017 1.25% AMOUNT = $26.26. ALTHOUGH THE 1.25% INCREASE IS CORRECT, $26.26 IS INCORRECT BECAUSE IT WAS BASED ON ($2,101.01) WHICH SHOULD HAVE BEEN BASED ON $1,591.14 WITH A CORRECTED AMOUNT OF $15.91 TOAL $1,607.05. I SHOULD HAVE BEEN GIVEN A LEASE RENEWAL WITH INCOME AFFIDAVIT BUT I WAS NOT GIVEN ONE WHICH VIOLATES THE AFFORDABILITY PLAN AND LEASE AGREEMENT.

| MONTH | YEAR | RENT-BILLED | RENT ACCORDING to INCOME | OVER-PAYMENT CREDIT |
|---|---|---|---|---|
| October | 2017 | $2,127.27 | **$1,607.05** | $1,607.05 |
| November | 2017 | $2,127.27 | $1,607.05 | $1,607.05 |
| December | 2017 | $2,127.27 | $1,607.05 | $1,607.05 |
| January | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |

## CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000

| MONTH | YEAR | RENT-BILLED | RENT ACCORDING to INCOME | OVER-PAYMENT CREDIT |
|---|---|---|---|---|
| February | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| March | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| April | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| May | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| June | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| July | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| August | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |
| September | 2018 | $2,127.27 | $1,607.05 | $1,607.05 |

**NEW INCREASE STARTS 10/01/2018 1.5% AMOUNT = $31.91. ALTHOUGH THE 1.5% INCREASE IS CORRECT, $31.91 IS INCORRECT BECAUSE IT WAS BASED ON ($2,127.27) WHICH SHOULD HAVE BEEN BASED ON $1,607.05 WITH A CORRECTED AMOUNT OF $24.10 INCREASE TOAL $1,631.15**

| MONTH | YEAR | RENT-BILLED | RENT ACCORDING to INCOME | OVER-PAYMENT CREDIT |
|---|---|---|---|---|
| October | 2018 | $2,159.18 | $1,631.15 | $1,631.15 |
| November | 2018 | $2,159.18 | $1,631.15 | $1,631.15 |
| December | 2018 | $2,159.18 | $1,631.15 | $1,631.15 |
| January | 2019 | $2,159.18 | $1,631.15 | $1,631.15 |
| February | 2019 | $2,159.18 | $1,631.15 | $1,631.15 |
| March | 2019 | $2,159.18 | $1,631.15 | $1,631.15 |
| April | 2019 | $2,159.18 | $1,631.15 | $335.96 |

$1,607.05 x 12 = $19,284.60 + $1,631.15 x 6 = $9,786.90 + $335.9 = $30,366.69 AMOUNT MUST BE CREDITED.  MY CURRENT SECURITY DEPOSIT IS $2,000.96.

MANAGEMENT COMPANY CHANGE NAME FROM RY MANAGEMENT LLC TO MARK GREEBERG REAL ESTATE LLC (MGRE) BUT IT IS STILL THE SAME STAFFS WITH ADDED ONES. LANDLORD CHANGED NAME FROM NORTH TOWN PHASE II TO IH PRESERVATION PARTNERS LLC BUT THEY ARE THE SAME OWNERS

**CAROL COMMISSIONG RENT LEDGER 3/2008 – 4/2019, MOVE-IN 03/01/2000**

SINCE DAY ONE. David B. Hirschhorn KNOWN OWNER WITH 51% SHAREHOLDER WITH OTHER

PARTNERS, ALSO IH PRESERVATION PARTNER'S MANAGER AND ISLAND HOUSE BOARD OF DIRECTORS'S

VICE PRESIDENT. Hirschhorn WORKS IN THE ON-SITE MANAGEMENT OFFICE 545 MAINSTREET NEW

YORK NY 10044. THE BUILDING IS CALLED: ISLAND HOUSE WHICH WENT FROM 100% RENTAL TO COOP

AND PARTIAL RENTAL TO BONA-FIDE MITCHEL LAMA TENENTS UNDER THE AFFORDABLITY PLAN IN late

2015. MONTHLY BILLING STATEMENT IS DECEPTIVE AND DOESN'T SHOW CURRENT RENT AMOUNT OR

UP TO DATE BILLING. IT'S DESIGN TO CONSEAL OVERBILLING WHICH IS ILLEGAL.



*Mentioned in court on 8/24/17 to court mediator Attorney that I haven't received it as of yet.*

*Friday*

*→ Received at my door 9/1/17*

**MARK GREENBERG**
**REAL ESTATE CO. LLC**

August 15, 2017 →

Re:     **2016 INCOME VALIDATION PROCESS PURSUANT**
        **TO THE ISLAND HOUSE AFFORDABILITY PLAN**

Dear Tenant:

Enclosed please find the Annual Affidavit Of Household Income For Calendar Year 2016, together with the Instructions for completing the Affidavit. Please review the instructions carefully and complete the Affidavit in its entirety. You will have sixty days (60) to complete and return the Affidavit (together with the supporting documentation) to the Management Office. Accordingly, please return the Affidavit (together with the supporting documentation) no later than 5:00 PM on October 13, 2017.

We wish to assure you that the purpose for which this information is being solicited is to confirm household members and to determine whether a rent increase is warranted based on your income in 2016 and if so, the amount of that increase. The information is not being sought for any other purpose.

You may elect not to participate in the Income Validation Process and not report your income in which case you will receive a 5% rent increase (the "Full Income Adjustment"), which is the maximum Income Adjustment provided for in the Affordability Plan; this would be in addition to the 1.25% Rent Guideline Board increase that you were advised of when you received your most recent lease renewal. If you elect not to participate in the Income Validation Process, you are still required to complete and submit the Household Composition information on Page 1 of the Affidavit but no income information or additional documentation need be furnished.

*I never got a lease renewal*

When completing the Affidavit, please note the following items from the Instruction page:

- The Affidavit must be completed for all named tenants and for all persons occupying the Apartment (regardless of age or earning status).

- The Affidavit must be signed by all named tenants and by all persons occupying the Apartment who are 18 years of age and above. A parent or legal guardian must sign the Affidavit for any occupant that is under the age of 18. As in prior years, the signature of all persons must be notarized. Household members do not need to sign the certification form at the same time in front of the same notary. Household members, such as students who are away at school or otherwise traveling, may simply sign the Income Affidavit in front of a notary wherever they are and that notary will notarize only that person's signature. You may submit as many original certification pages as may be necessary for all household members to conveniently complete the Income Affidavit in a timely manner.

- Unless you have elected to opt out of the Income Validation Process, you are required to provide a complete US Federal Income Tax return together with the Affidavit. If you do not file a tax return or have not filed your return (note that returns for 2016 are required to be filed by October 15, 2017), then you must provide the tax forms you received if you received a particular item of income (i.e., W-2, 1099, etc.)

- All occupants of the Apartment are required to sign the IRS Form 4506-T (tax return transcript) and to return it with the Affidavit:

- All sources of income must be reported and verified regardless of whether such income is paid in the US or in a foreign country. Whether or not such income is taxable in the US does not affect your obligation to report such income on the Affidavit.

Any tenant who does not file a complete Annual Affidavit Of Household Income, together with all required supporting documentation by 5:00 PM on October 13, 2017, will receive the Full Income Adjustment. Please note that unlike in prior years, once the Full Income Adjustment is assessed, it cannot be removed, therefore please be sure to complete and submit the required information by the due date. If you have special circumstances that prevent you from complying with the due date, please contact the management office immediately.

If you have any questions regarding the matter, please contact the Management Office at (212) 755-3012.

Very truly yours,

Mark Greenberg Real Estate Co. LLC.

545 Main Street, New York, NY  10044 ▪ Phone 212-755-3012 ▪ Fax 212-755-3160 ▪ www.mgre.com



**MARK GREENBERG
REAL ESTATE CO. LLC**

## 2016 INCOME VALIDATION PROCESS
## PURSUANT TO ISLAND HOUSE AFFORDABILITY PLAN

**Purpose:**    The Income Validation Process is the procedure established under the Affordability Plan for tenants to report their income for calendar year 2016 in order for Management to compute whether an Income Adjustment to the increase rate (1.25%) approved by the NYC Rent Guidelines Board (the "RGB Base Rate") is applicable to a particular tenant for the lease year beginning October 1, 2017. The Affordability Plan sets forth a schedule of Income Adjustments based upon whether, and by how much, the gross annual income from all sources for all household members exceeds the Area Median Income ("AMI"). All Bona Fide Mitchell Lama Tenants have previously been advised of their new rent effective October 1, 2017 which was computed based upon the RGB Base Rate for one year leases beginning October 1, 2017. Following completion of the Income Validation Process, tenants will be advised of the amount of the Income Adjustment, if any, that will be added to the RGB Base Rate to determine their total new rent. Any increase in the rent attributable to the Income Adjustment is retroactive to October 1, 2017.

*[handwritten note in right margin: I have NOT been advised of any New rent]*

**Option To Elect Out:**   A tenant may elect not to participate in the Income Validation Process by checking the box on the attached Annual Affidavit Of Household Income For Calendar Year 2016 which says:   **(  ) TENANT ELECTS TO OPT OUT OF THE INCOME VALIDATION PROCESS AND ACCEPT THE FULL INCOME ADJUSTMENT AS DESCRIBED IN THE INSTRUCTIONS.** A tenant who elects not to participate in the Income Validation Process is required to complete the Household Composition information on Page 1 of the Affidavit, however, no income information need be provided. A tenant who elects not to participate will receive an Income Adjustment of 5% (the "Full Income Adjustment").

**Annual Affidavit Of Household Income:**   The Income Validation Process requires that the attached Annual Affidavit Of Household Income For Calendar Year 2016 be completed by the tenant. Following initial review of a tenant's submission. Management may request additional information or clarifications and the tenant is required to respond to all such additional requests within 15 days of the request. Failure to comply with all of the requirements of the Income Validation Process, including additional requests, will result in the Affidavit being considered as not having been timely filed resulting in the Full Income Adjustment being added to the RGB Base Rate. Please note the following when completing the Affidavit:

1. The income information listed on the Affidavit must be completed for all named tenants and for all persons occupying the Apartment (regardless of age or earning status).

2. All spaces on the Affidavit must be completed (i.e., no space is to be left blank, enter 0 if no income for a particular line item was received).

3. The Affidavit must be signed by all named tenants and by all persons occupying the Apartment who are 18 years of age and above.  A parent or legal guardian must sign the Affidavit for any occupant that is under the age of 18.

4. All signatures must be notarized. Use additional notary blocks as needed. Household members do not need to sign the certification form at the same time in front of the same notary. Household members, such as students who are away at school, or otherwise traveling, may simply sign the Income Affidavit in front of a notary wherever they are and that notary will notarize only that person's signature. You may submit as many original certification pages as may be necessary for all household members to conveniently complete the Income Affidavit in a timely manner.

**Income Reporting Period:** The income reporting period is the calendar year January 1, 2016 to December 31, 2016.

**Explanation Of Income To Be Reported:** The Annual Affidavit Of Household Income is intended to capture all income received from all sources by the tenant and by any person occupying the Apartment for any period of time during the reporting period.

**Tax Returns:** Unless you have elected to opt out of the Income Validation Process and accept the Full Income Adjustment, you are required to provide a complete US Federal Income Tax return. If you do not file a tax return or have not filed your return (note that returns for 2016 are required to be filed by October 15, 2017), then you must provide a copy of any tax form you may have received (i.e., W-2, 1099, K-1, etc.) listed on the Affidavit if you received any payments covered by any such tax reporting forms.

**Filing Due Date:** The Annual Affidavit Of Household Income For Calendar Year 2016, together with all required documentation, must be received by Management no later than 5:00 PM on October 13, 2017. Any tenant who fails to file a complete Annual Affidavit Of Household Income, together with all required supporting documentation by October 13, 2017, shall receive the Full Income Adjustment. TIME IS OF THE ESSENCE to file the Annual Affidavit Of Household Income and required documentation by October 13, 2017. Tenants should note that unlike under Mitchell Lama, if a tenant fails to timely file a properly completed Annual Affidavit Of Household Income and supporting documentation, there will be no opportunity to remove the Full Income Adjustment and the Full Income Adjustment will be a permanent component of the new rent. Accordingly, a tenant who fails to timely and properly file, will be required to pay the new rent, inclusive of the Full Income Adjustment, for the entire lease year as of October 1, 2017.

**Verification Forms:** Information contained on the Annual Affidavit Of Household Income may be verified with taxing authorities, employers, credit bureaus and such other sources as Owner shall determine to be appropriate. Accordingly, tenant and all occupants of the Apartment are required to sign **Tax Transcript Form 4506-T**. A Tax Transcript is a summary of your tax return for a particular year that is provided by the IRS without charge. One of the purposes that the IRS offers this document is to verify reported income. You are required to complete, sign and return Form 4506-T with your Income Affidavit.

**Note: When completing Form 4506-T be sure to check box a on line 6 and insert 12/31/16 on line 9 (only tax year 2016 is being requested).**

**Note to Tenants who do not report US Income or file US Tax Returns:** All sources of income must be reported and verified regardless of whether such income is paid in the US or in a foreign country. Whether or not such income is taxable in the US does not affect your obligation to report all such income on the Affidavit of Household Income. If you earn or are paid income in the US or in any other country, the failure to report such income and to provide verification of same will be deemed a failure to file and will result in the Full Income Adjustment

Island House Tenants Corp <richelle@mgre.com>
To
Carol Commissiong
Jul 10 at 5:37 PM
To: 555-1302,  Island House Tenants Corp.

New Maintenance Request #675 has been submitted for your Unit. The details are below:

Request Description: bathroom ceiling and wall damage from construction in apartment above 1302. I made a report to the door station by intercom on Sunday June 25, 2017 and spoke to someone (porter) not doorman. A week went by and no one came to inspect the problem. On Saturday July 1, 2017 on my way out I told the doorman Danny about the needed repairs and told him that there may be a flood upstairs. On my way back home in the afternoon, I spoke to Danny again and the handyman Carlos was there in the lobby who said there's no flood upstairs. I told him to come to my apartment and take a look which he did. We set a time for him to return on Sunday 7/2/17 at 3:30 pm which he did after inspecting the apartment above mine. He said the problem was caused by a new shower installation and he took pictures of the damage in my apartment caused by the water to my ceiling and the wall and said he'll make a report to the Super/Mark. Time went by but no one came to make any repairs. On Wednesday July 5, 2017 while checking my mail I saw the handyman Joshua and asked him when the repairs will be done to my apartment and he said he wasn't aware of the problem and will check it out. While talking to Joshua in the lobby the Super/Mark stood in the doorway of his office in the lobby down the hall and started shouting and screaming at Joshua when he saw us talking and ordered him to do something, it was dreadful and very unprofessional acting as if he was in the ghetto. The tone he used to speak to another staff member in the presence of others was not nice. I was on my way out and left the building. I returned later that evening around 10:30 pm and saw the new handyman (Hispanic) sitting at the door station. So, I asked him if the shower problem in the apartment above mine was fixed and he said yes. I heard the drilling in the bathroom that morning. So, I waited for repair to be made to my apartment but no one came as of yet. On Saturday July 8, 2017 upon returning home in the afternoon I saw the doorman Mokesh and the handyman Carlos in the lobby. I asked Carlos when the repair will be made to my apartment and he said he don't know because he is waiting on the Super/Mark to give him a work ticket and said, "I can't make any repairs without a work ticket." It sounds like the handymen have been instructed by the Super/Mark not to make any repairs to my apartment. Now, my question is, did the landlord or anyone from management instruct the super not to make any repair to my apartment and why?

Submitted by: Carol Commissiong - Ih Preservation Partners Llc / (s) Commissiong on 7/10/17 5:37 PM

Note: This is an automatic notification from BuildingLink. Do not reply to this E-mail.

You can change whether you continue to receive this type of BuildingLink automatic notification in the notification preferences section of your profile.

# The City of New York
## Department of Housing Preservation and Development
### Division of Code Enforcement

# Open Violation Summary Report

For The Following Selected Criteria; From Date - All Through Date - All, Viol Hazard Code - All, Violation Order No. - All, Apt No. - 1302, Violation Category - All

**Building Location:**

Address: 555    MAIN STREET

Boro: MANHATTAN    Zip: 10044

Block: 01373    Lot: 7505    Census Tract: 23801

**Building Profile:**

Range: 555-573

CD: 8

No. of Stories: 19    MDR #: 143834

A Units: 191

B Units:

Ownership/Prog: PVT

Bldg Class: HEREAFTER ERECTED CLASS A

ERP Repair Ind:

Last Insp Dt: 07/15/2017

Last ERP: 00/00/0000

## HPD Registration Information

| Owner Type | Last Valid Reg. Date | Organization | Last Name | First Name | Boro/House No. | Street Name | Apt | City | State |
|---|---|---|---|---|---|---|---|---|---|
| Other | 04/11/2017 | ISLAND HOUSE TENANTS CORP | CANNON | GRAHAM | 545 | MAIN STREET | | NEW YORK | NY |
| Other | 04/11/2017 | | D'AMICO | ROBERT | 89-17 | 150 STREET | | REAFFLUSHING | NY |
| MANAGING AGENT | 04/11/2017 | ISLAND HOUSE TENANTS CORP | GOLSTICK | JAMES | 1981 | MARCUS AVENUE | C131 | LAKE SUCCESNY | |
| Other | 04/11/2017 | ISLAND HOUSE TENANTS CORP | NEUFVILLE | RICHELLE | | | | | |
| CORP | 04/11/2017 | ISLAND HOUSE TENANTS CORP | | | | | | | |

| Story | Apt | Date Reported | Hazard Class | Order No | Violation Seq No | Item No | Violation Status | Status Dt | Certification Status | NOV Issue Dt | Cert Due Date | Cert Rcvd | Reinspect Dt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1302 | 07/15/2017 | | B | 508 | 11879920 | | NOV SENT | 07/17/2017 | OVERDUE | 07/17/2017 | 09/04/2017 | 00/00/0000 | 00/00/0000 |

Viol Desc  § 27-2005 ADM CODE  REPAIR THE BROKEN OR DEFECTIVE PLASTERED SURFACES AND PAINT IN A UNIFORM COLOR WEST WALL IN THE 1st BATHROOM  FROM EAST LOCATED AT APT 1302, 13th STORY, 1st APARTMENT FROM WEST AT NORTH

| 1302 | 07/15/2017 | | B | 508 | 11879917 | | NOV SENT | 07/17/2017 | OVERDUE | 07/17/2017 | 09/04/2017 | 00/00/0000 | 00/00/0000 |

Viol Desc  § 27-2005 ADM CODE  REPAIR THE BROKEN OR DEFECTIVE PLASTERED SURFACES AND PAINT IN A UNIFORM COLOR CEILING  IN THE 1st BATHROOM  FROM EAST LOCATED AT APT 1302, 13th STORY, 1st APARTMENT FROM WEST AT NORTH

Total Open Violations for the Bldg: 9  'A'= 5  B = 4  C = 0  I = 0  Other = 0

Total Open Violations for the Bldg for the selected criteria: 2  A = 0  B = 2  C = 0  I = 0  Other = 0

For The Following Selected Criteria; From Date - All Through Date - All, Viol Hazard Code - All, Violation Order No. - All, Apt No. - 1302, Violation Category - All



**CITY OF NEW YORK**

**DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT**

**Office of Enforcement and Neighborhood Services Division of Code Enforcement**

The undersigned, having compared the annexed copies with the original document in my custody, hereby certifies that the same is a true and complete copy of the original; e copies thereon were made at the time of the events the record or within a reasonable me thereafter; the original was made and kept in the regular course of business of HPD, it was the regular course of HPD's business to make and keep such records at the time of the events they record or made a reasonable time thereafter.

I am an employee duly designated by HPD to make the certification.

Given under my hand and seal of the Department of Housing Preservation and Development of the City of New York.

The ____13____ day of ___September___, 20_17_

_____A. Deoro_____

Certifying Officer

HPD Building, Registration & Violation    Services  — Select —  ▼    Home

**The selected address: 555 MAIN STREET, Manhattan 10044**

| HPD# | Range | Block | Lot | CD | CensusTract | Stories | A Units | B Units | Ownership | Registration# | Class |
|------|-------|-------|-----|----|--------------|---------|---------|---------|-----------|----------------|-------|
| 955319 Active | 555-573 | 01373 | 7505 | 8 | 23801 | 19 | 191 | - | PVT | 143834 | E |

Other Units

Property Owner Registration Information

Charges

Complaint Status

Complaint History

Submit Certificate of Installation

Litigation/Case Status

Tenant Harassment Report

**All Open Violations**

prior year Open Viol.'s

Ecertification

Overdue Lead Paint Viol. Correction

Vacate Orders

I-Card Images

PROS Online

Map

### Building Registration Summary Report

Find Apartment#   1302   [ Clear ]   [ Search ]

**The below listed violation(s) were filed with HPD for the above referenced apartment.**

| Owner | Last Reg Dt / Reg Expire Dt | Organization | Last Nm | First Nm | House No | Street Nm | Apt | City | State | Zip |
|-------|------------------------------|--------------|---------|----------|----------|-----------|-----|------|-------|-----|
| Head Officer | 09/13/2017 09/01/2018 | | CARDOSO | AMRAH | 545 | MAIN STREET | | NEW YORK | NY | 10044 |
| Officer | 09/13/2017 09/01/2018 | | GREENBAUM | STEVEN | 30-30 | NORTHERN BLVD | 4TH FL | LONGISLAND CITY | NY | 11101 |
| Corporation | 09/13/2017 09/01/2018 | ISLAND HOUSE TENANTS CORP. | | | 545 | MAIN STREET | | ROOSEVELT | NY | 10044 |
| Managing Agent | 09/13/2017 09/01/2018 | | NEUFVILLE | RICHELLE | 30-30 | NORTHERN BLVD | 4TH FL | LONGISLAND CITY | NY | 11101 |

**Open Violations - ALL DATES**
**There are 13 Violations. Arranged by category:  A class: 7    B class: 6    C class: 0    I class: 0**

**For Definitions of the columns indicated below, select glossary under the Services option (located at the upper right).**

**To sort the columns, click on their underlined headers below in the blue area.**

| Apt Story | Reported Date, now ISSUED Date | Hrd Class no | Order no | Violation ID, NOV ID, NOV Type | Violation Description | Status Status Date | Certify By Date Actual Cert. Date |
|-----------|--------------------------------|--------------|----------|--------------------------------|------------------------|--------------------|------------------------------------|
| 1302 13 | 2017/10/03 2017/10/06 | A | 596 * | 12004264 5866473 Original | § 27-2026 adm code replace the broken or defective porcelin interior of the washbasin in the bathroom located at apt 1302, 13th story, 1st apartment from east at south | NOV SENT 2017/10/06 | 2018/01/23 |
| 1302 13 | 2017/10/03 2017/10/06 | B | 550 | 12004266 5866474 Original | § 27-2005 hmc:trace and repair the source and abate the nuisance consisting of mold ... on the ceiling in the bathroom located at apt 1302, 13th story, 1st apartment from east at south | NOV SENT 2017/11/24 | 2017/11/24 |
| 1302 13 | 2017/10/03 2017/10/06 | B | 508 | 12004272 5866474 Original | § 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling and east wall in the bathroom located at apt 1302, 13th story, 1st apartment from east at south | NOV SENT 2017/11/24 | 2017/11/24 |
| 1302 13 | 2017/10/03 2017/10/06 | A | 508 | 12004274 5866473 Original | § 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color the ceiling in the 1st room from east at south located at apt 1302, 13th story, 1st apartment from east at south | NOV SENT 2017/10/06 | 2018/01/23 |
| 1302 13 | 2017/07/15 2017/07/17 | B | 508 | 11879917 5802433 Original | § 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color ceiling in the 1st bathroom from east located at apt 1302, 13th story, 1st apartment from west at north | NOV SENT 2017/07/17 | 2017/09/04 |
| 1302 13 | 2017/07/15 2017/07/17 | B | 508 | 11879920 | § 27-2005 adm code repair the broken or defective plastered surfaces and paint in a uniform color west | NOV SENT 2017/07/17 | 2017/09/04 |

NYC.gov – NEW YORK CITY'S OFFICIAL WEB SITE

Services | News & Features | City Life | City Agencies | Office of the Mayor | Contact Us | Search

HPD Building Info

Original   wall in the 1st bathroom from east located at apt 1302,
13th story, 1st apartment from west at north

**CIVIL COURT OF THE CITY OF NEW YORK**

County of

Date    1/12/18    Part *B*

Index No. L&T: _____ 16341

Page _____ of _____

Hon. _____ Wendy

Petitioner(s),    *SO ORDERED*
PETER M. WENDT
JUDGE, HOUSING PART

*against*

Respondent(s)

**STIPULATION OF SETTLEMENT**

*The parties understand that each party has the right to a trial, the right to see a Judge at any time and the right not to enter into a stipulation of settlement. However, after review of all the issues, the parties agree that they do not want to go to trial and instead agree to the following stipulation in settlement of the issues in this matter.*

| Party (please print) | | Added/Amended or Deleted | Appearance | No Appearance | No Answer |
|---|---|---|---|---|---|
| Petitioner | | | | | |
| Respondent 1 | | | | | |
| Respondent 2 | | | | | |
| Respondent 3 | | | | | |

CIV-LT-30 page 1(Revised 4/07)

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: HOUSING PART B
------------------------------------------x

CAROL COMMISSIONG

                        Petitioner(s),

        -against-

IH PRESERVATION PARTNERS LLC

                        Respondent(s),

        AND

DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT OF THE CITY OF NEW YORK,
                        Co-Respondents.
------------------------------------------x

DEFAULT

ORDER AND JUDGMENT

Index No.: HP: 1624/17

Premises: 655 MAIN ST #1602

New York, NY 10044

        The above entitled action having been brought before the Honorable

PETER WENDT      at Part B of this Court held in the courthouse located

at 111 Centre Street, Rm-526, New York, NY 10013 on the 4th day of

DECEMBER, 2017 and Petitioner(s) CAROL COMMISSIONG

having appeared pro se, and the Co-respondent Department of Housing Preservation

and Development of the City of New York having appeared by its attorney DEBORAH

RAND, ESQ., MARTINE SASS      Esq., of counsel, and

N/A N/A      (no one) appearing, in opposition thereto.

        NOW upon the testimony of the Petitioner(s) CAROL COMMISSIONG

and/or witness(es) N/A N/A

and after hearing from Respondent(s) N/A N/A

and/or counsel for Respondent(s) N/A N/A

and after hearing the attorney for the Co-respondent Department of Housing

Preservation and Development of the City of New York, DEBORAH RAND, ESQ.,

MARTINE SASS      Esq., of counsel.

IT IS hereby adjudged and decreed that the Co-respondent Department of Housing Preservation and Development shall recover of Respondent(s) _T M PERFESSIONAL PARTNERS LLC_ a judgment in the amount of _One thousand six hundred eighty six 00_ dollars ($ _1686.00_ ) and said judgment shall be a lien against Block: _1575_ , Lot: _7905_ .

IT IS FURTHER ORDERED that the Order and Notice of Violations dated _10/05/17_ shall remain in effect.

Dated: _12/5/17_
New York, NY

HON. DAVID M. WENDT
JUDGE, HOUSING COURT
J.H.C.

Dated: _12/5/17_
New York, NY

ENTERED: _Carol Alt_
CHIEF CLERK

Carol Alt
Clerk of Court

COUNTY OF NEW YORK: HOUSING PART B
------------------------------------------------X

CAROL COMMISSIONG

                              Petitioner(s),

        -against-

IH PRESERVATION PARTNERS LLC

                              Respondent(s),

        and

DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT OF THE CITY OF NEW YORK,

                              Co-Respondents.
------------------------------------------------X

ORDER AND NOTICE OF VIOLATION

Index No.: HP 1624/17

Premises:
555 MAIN STREET, APT # 1302
MANHATTAN, NY 10044

P R E S E N T:  HON. Peter Wendt
                J.H.C.

        Upon reading the Order to Show Cause dated September 20, 2017, the affirmation/affidavit of petitioner, and the petitioner and respondent DHPD having appeared and _____ one _____ (no one) having appeared in opposition,

        Now, on motion of petitioner (and DHPD) for an order, and such motion having been heard by me on ___10/10___, 20_17_,

        IT IS HEREBY FOUND:

        1)  That the respondent(s) "owner(s)" was/were properly served.

        2)  That the following conditions existing at the premises that are listed in the annexed inspection report dated __10/3/17 - 10/5/17__ and classified pursuant to hazard class are violations of the Housing Maintenance Code and/or the Multiple Dwelling Law.

        3)  That after (trial) (inquest) (conference) the court has found that the following conditions as listed in the inspection report and on Schedule A exist at the premises and are violations of the Housing Maintenance Code and/or the Multiple Dwelling Law.

        IT IS HEREBY ORDERED as follows:

        a)  The respondent(s) IH PRESERVATION PARTNERS LLC,

shall correct all violations listed on annexed inspection report and on Schedule A and classified as "C" (immediately hazardous) violations within 24 hours of the date of service of this order, except for "C" violations regarding lead paint hazards, or be subject to civil penalties of $50.00 per day per violation occurring in a building containing five or fewer dwelling units, and civil penalties of $50.00-$150.00 per violation plus $125.00 per day per violation occurring in a building containing more than five dwelling units, said penalty to accrue from the end of the period set for compliance until the violation is corrected.  The penalty for violations placed for failure to supply heat and hot water as required by law shall be, for each such violation, $250.00 per day from and including the date the violation was placed until the violation is corrected, except for violation(s) involving a device on the heating system, in which case the penalty shall be $15.00 per day for each such violation, from and including the date each such violation is placed, but such penalty shall not be less than $1,000 for each violation.



[illegible]SERVATION PARTNERS LLC

Department of Housing Preservation and Development
100 Gold St., 6th Fl.
New York, NY 10038
Attn: New York Unit

We hereby consent to the entry of the above Order and Notice of Violation.

Dated: 10/11, 2017 — Petitioner-Tenant

Dated: ____, 20__ — Attorney to the Petitioner-Tenant

Dated: ____, 20__ — Respondent-Owner

Dated: ____, 20__ — Respondent-Owner

Dated: ____, 20__ — Attorney for Respondent-Owner

Dated: 10/10, 2017 — ~~VALENTINE MORETTI~~, of Counsel
Martha Ann Weithman, ESQ
Attorney for Respondent DHPD
100 Gold Street, 6th floor
New York, NY 10038
212-863-8264

So ordered:

Dated: 10/10, 2017

EILEEN M. WENDT
J.H.C.

Civil Court of the City of New York
County of New York
Housing Part

**WARNING**
**YOUR FAILURE TO APPEAR IN**
**COURT MAY RESULT IN YOUR**
**IMMEDIATE ARREST AND**
**IMPRISONMENT FOR CONTEMPT**
**OF COURT**

Index #: LT-001624-17/NY
Seq #: 3
# Resp OSC Applications: 0

**Order to Show Cause to Punish for Contempt (Punishable by Fine and/or Imprisonment)**

Carol Commissiong
        Petitioner(s)
  -against-
I H Preservation Partners LLC
        Respondent(s)

**Property Address:**
555 Main St
Apt 1302
New York, NY 10044-0260

Upon the annexed affidavit of Carol Commissiong (Petr), sworn to on December 12, 2017,
the Order of _____ dated _____ , and upon all the papers and proceedings herein:

Let the Respondent(s) or His/Her/Their Attorney(s) Show Cause at a Motion Term of the:

    Civil Court of the City of New York
    Housing Part: Part B - HP/HPD
    Room: 1166
    Located at: 111 Centre Street, New York, NY 10013
    On: ~~December 21, 2017~~ *January 12, 2018*
    At: **9:30 AM**

or as soon thereafter as counsel may be heard, why an Order should not be made, pursuant to Section 5104 of the CPLR, Article 19 of the
Judiciary Law and _____

PUNISHING _____ *Respondent* _____ for separate and distinct **Civil Contempt(s)** of
court by fine(s) and imprisonment pursuant to *Sections 773 and 774 of the Judiciary Law*, for failure(s) to comply with the provisions and
mandates of the Order(s)/Stipulation(s) dated _____ , which failure(s) was/were calculated to and/or actually did defeat,
impair, impede and prejudice the rights of the Petitioner, all of the above separate and distinct contempt(s) being those defined in the Order.
    **and/or**
PUNISHING _____ for separate and distinct **Criminal Contempt(s)**
of court by imprisonment for a definite period not to exceed 30 days and a fine of up to one thousand dollars ($1,000) pursuant to *Section
751 of the Judiciary Law*, for each separate contempt for willful failure(s) with the provisions and mandates of the Order(s)/Stipulation(s)
dated _____ ,
    **and**
GRANTING such other and further relief as may be just.

SERVICE of a copy of this Order together with the papers upon which it was granted, on the _____ *Respondents* _____
**For Civil Contempt(s):** by regular mail on the opposing party. If that party is represented by an attorney, on the attorney.
**For Criminal Contempt(s):** (in accordance with Sections 308, 309, 310, 311 and 312 of the CPLR, or in accordance with the appropriate
sections of the Civil Court Act or the Judiciary Law) by _____ , shall be good and sufficient. Proof of such
service may be filed with the Clerk of this Court before the return date of this Order to Show Cause, or on the day of the hearing with the
Clerk in the Part indicated above.

Date: _12/12/17_

Denied: _____

                             Peter M. Wendt, Housing Court Judge

Generated: December 12, 2017

**Civil Court of the City of New York**
County of New York

Index Number: LT-001624-17/NY
Pre-OSC Seq: 3



**Affidavit in support of an Order to Show Cause to Punish for Contempt (Punishable by Fine and/or Imprisonment)**

Carol Commissiong
      Petitioner(s)

    -against-

I H Preservation Partners LLC
      Respondent(s)

**Property Address:**
555 Main St
Apt 1302
New York, NY 10044-0260

State of New York - County of New York ss:

Carol Commissiong, being duly sworn, deposes and says:

1. I am the Movant, and the _____Petitioner_____ in this action.

2. On ___10/10/17___ (an Order was rendered) (a Stipulation was "So Ordered") by the Hon. ___Peter M. Wendt___.
   A copy is attached (together with _____).

3. This Order/Stipulation was not complied with in that ___IH Preservation Partners did not___ ___repair 5 of the 6 outstanding violations.___
   _____
   the effect of which was calculated to, and/or actually did defeat, impair, impede and prejudice the Movant, and/or was willful.

4. I request that there be a Hearing on the issue of noncompliance with the above mentioned Order/Stipulation and that the Court issue an Order that ___I H Preservation Partners LLC___ be held in Contempt of Court for failure to follow the Order of the Court.

   <u>INITIAL ONE</u>

5. ___X___ **I have not** requested a previous Order to Show Cause for this relief.

   _____ **I have** requested a previous Order to Show Cause for this relief but I am making this further application because
   _____
   _____

Sworn to before me this __12__ day of __Dec__, 20__17__

_____
(Signature of Court Employee and Title, or Notary Public)

_____
(Signature of Movant)

Court of the City of New York
.y of New York

Index Number: LT-001624-17/NY
Pre-OSC Seq: 1

**Affidavit in support of an Order to Show Cause to Restore for Compliance and Assessment of Civil Penalties**

Carol Commissiong
           Petitioner(s)

  -against-

I H Preservation Partners LLC
           Respondent(s)

               AND

The Department of Housing Preservation
       and Development

Property Address:
555 Main St
Apt 1302
New York, NY 10044-0260

State of New York - County of New York ss:

Carol Commissiong, being duly sworn, deposes and says:

**1. Party:** I am the _____ in the above proceeding.
             (Petitioner / a [relative/friend/etc.] of the Petitioner)

**2. History:** An Order of the Court directing the correction of violations was made, or a stipulation between the parties was entered into, on _____

**3. Facts:** The following violations/conditions have not been corrected:

1) Mold in Ceiling
2) Ceiling/wall incomplete
3) Bathroom Sink dents varnish
4) Bedroom Floor varnish corners
5) _____
6) _____
7) _____
8) _____
9) _____

Tenant's
Initials

**Prior Order**
a) I have not requested a prior Order to Show Cause for a Compliance Hearing on this case.
b) I have requested a prior Order to Show Cause for a Compliance Hearing in this case but I am making this further application because:

_____
_____
_____

**5. Requests:** I respectfully request that:
- this case be restored to the calendar for a Compliance Hearing and assessment of civil penalties (fine) against my landlord since violations have not been corrected pursuant to the Court's Order.
- because I am appearing *pro-se*, without an attorney or process server, permission be granted to serve these papers myself, by Certified Mail, Return Receipt Requested.
- that the attached Order be signed.

Sworn to before me this ____ day of _____, 20 __ (Sign) _____
                                            Signature of Petitioner

_____
Signature of Court Employee and Title, or Notary Public

Civil Court of the City of New York
County of New York
Housing Part



Index #: **LT-001624-17/NY**
Seq #: 1
# Resp OSC Applications: 0

## Order to Show Cause to Restore for Compliance and Assessment of Civil Penalties

Carol Commissiong
        Petitioner(s)

  -against-

I H Preservation Partners LLC
        Respondent(s)

      AND

The Department of Housing Preservation
    and Development (DHPD)

**Property Address:**
555 Main St
Apt 1302
New York, NY 10044-0260

Upon the annexed affidavit of Carol Commissiong (Petr), sworn to on November 27, 2017,
the Order of _____ dated _____ , and upon all the papers and proceedings herein:

Let the Respondent(s) or His/Her/Their Attorney(s) Show Cause at a Motion Term of the:

      Civil Court of the City of New York
      Housing Part: Part B - HP/HPD
      Room: 1166
      Located at: 111 Centre Street, New York, NY 10013
      On: **December 5, 2017**
      At: **9:30 AM**

or as soon thereafter as counsel may be heard, why an Order should not be made:
**restoring the case to the calendar for a compliance hearing and assessment of civil penalties** and/or granting such other and further relief as may be just.

Service of a copy of this Order to Show Cause and Annexed Affidavit upon the opposing Party's Attorney (or if he/she has none, on the Party) personally or by Certified Mail, Return Receipt Requested, and also upon the Department of Housing Preservation and Development by Certified Mail, Return Receipt Requested, on or before _11-29-17_ shall be deemed good and sufficient. Proof of such service may be filed with the Clerk in the Part indicated above on the return date of the Order to Show Cause.

If the Landlord is registered with the Department of Housing Preservation and Development, personal service or mailing may be made to the Landlord at the address indicated in such registration.

Mailing to the Department of Housing Preservation and Development shall be made to the:
Housing Litigation Bureau, 3rd Floor, 100 Gold Street, New York, NY 10036.

**Attorney (or Party):**
I H Preservation Partners LLC
545 Main St
New York, NY 10044-0009

Date: _11-27-17_

Denied: _____

Generated: November 27, 2017

_____ne Katz, Housing Court Judge



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

NEW YORK, NY 10044

Certified Mail Fee $3.35

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $0.00
☐ Return Receipt (electronic) $0.00
☐ Certified Mail Restricted Delivery $0.00
☐ Adult Signature Required $0.00
☐ Adult Signature Restricted Delivery $

Postage $0.49

Total Postage and Fees $5.59

Sent To _I H Preservation Partners LLC_
Street and Apt. No., or PO Box No. _545 Main Street_
City, State, ZIP+4® _NY NY 10044_

Postmark Here  11/27/2017

7/29/2019       Gmail - Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.

Case 1:19-cv-08390-VSB    Document 3    Filed 10/10/19    Page 86 of 110

 Gmail

**Carol Commissiong <carolcommissiong@gmail.com>**

---

# Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.

**Carol Commissiong <carolcommissiong@gmail.com>**           Mon, Aug 27, 2018 at 9:17 AM
To: "Yeh, Tangchi" <Tangchi.Yeh@hud.gov>

Ms. Yeh,

I wish I had more time but here is my answer: I will agree to this agreement with the following adjustment as there are some errors.

First I'll like to point out that my current rent shouldn't be any more than $1,650.00 with fair increase according to my income. However, the over billing started in 2009 when my rent was $1,499.09 and was increased to a whopping $1,712.35 that's $212.00 more. I contacted management then who responded and said the building was going through a major capital improvement (MCI) and that the increase will come back down but as you can see it continued with the new lease which I was coerced, intimidated and threatened to sign or loose my apartment. I renewed my lease on 2/24/12 and it was signed by owner agent on 2/28/12 with 0 zero increase for the period 3/1/12 to 2/28/13. A copy of the lease renewal agreement for this period and new lease was provided with my complaint for your reference.

Furthermore, the agreement must be accompanied with lease renewal for the periods: 10/1/16 - 9/30/17, 10/1/17 - 9/30/18, 10/1/18  9/30/19. By law the landlord must provide all Bona Fide Michell Lama Tenants under the Affordability Plan with 60 -90 days lease renewal agreement/notice for each year which management and landlord have violated and continues to do. Therefore I am discriminated against with prejudice. I never got the new lease until August 2014 which expired 9/30/14 with a new increase. Since the building MCI increase in 2009 I have been struggling to pay my rent because it wasn't according to my income. At times, I even use student loans to make up the difference which I am now paying back with interest.

The price adjustment will start with the new lease period 10/1/12 which violates my lease renewal with an unfair increase of 6%.

### A. **Relief for the Complainant**

**As of the effective date of this Agreement:**

1. Respondents agree to waive Complainant Carol Commissiong the rent and late fees in the amount of $to be calculated for the period from October 1, 2012 to September 30, 2018.

2. Respondents agree to bill Complainant the monthly rent in the amount of $1,712.35 (0% rent increase), not $1,887.69, from October 2013 to September 2014.  Respondents agree to waive the rent overcharge: $72.6 times 12 months = $871.2, and late fees $100 = $971.2.

3. Respondents agree to bill Complainant the monthly rent in the amount of $1,712.35 (1,712.35 plus 1% rent increase), not $1,906.57 ($1,887.69 plus 1% rent increase), from October 2014 to April 2015. Respondents agree to waive the rent overcharge: $73.33 times 7 months = $513.31, and late fees $20 = $523.31.

4. Respondents agree to bill Complainant the monthly rent in the amount of $1,833.24 ($1,815.09 plus 1% rent increase), not $2,000.96 ($1,906.57 plus 0% rent increase of $113.27), from May 2015 to September 2015.  Respondents agree to waive the rent overcharge: $167.72 times 5 months = $838.60, plus late fees $150 and retro charge $660.69 = $1,649.29. <u>Management never ever provided me with an income affidavit neither did the prove doing so. They tried to do the same crime recently but it came up in court then I received it at my door a few days later but the 60 days was violated. there have been mail fraud which also includes the mail delivery man taking bribes, proof was sent with my complaint</u>

5. Respondents agree to bill Complainant the monthly rent in the amount of $1,833.24 (1,833.24 plus 0% rent increase) not $2,000.96 from October 2015 to April 2016 and not $2,101.01 ($2,000.96 plus 5% rent increase of $100.05) from May 2016 to September 2016.  Respondents agree to waive the rent

overcharge: $167.72 times 7 months = $1,174.04, plus $267.77 times 5 months = $1,338.85 and retro charge $700.34 = $3,213.23.

6. Respondents agree to bill Complainant the monthly rent in the amount of $1,833.24 ($1,833.24 plus 0% rent increase), not $2,101.01 ($2,101.01 plus 0% rent increase) from October 2016 to September 2017. Respondents agree to waive the rent overcharge: $267.77 times 12 months = $3,213.24 and late fees $300 = $3,513.24.

7. Respondents agree to bill Complainant the monthly rent in the amount of $1,855.95 ($1,833.24 plus 1.25% rent increase of $22.91), not $2,127.27 ($2,101.01 plus 1.25% rent increase of $26.26) from October 2017 to September 2018. Respondents agree to waive the rent overcharge: $271.32 times 12 months to September 1, 2018 = $3,255.84 and late fees $600 = $3,855.84.

8. For the period from October 1, 2018 to September 30, 2019, Respondents agree to calculate Complainant's monthly rent based on the previous calendar year monthly amount of $1,855.95.

I need time to workout the calculations but I must go to work now and will send another email tonight when I get home. This is to let you know where I stand.

Carol Commissiong

[Quoted text hidden]

overcharge: $167.72 times 7 months = $1,174.04, plus $267.77 times 5 months = $1,338.85 and retro charge $700.34 = $3,213.23.

6. Respondents agree to bill Complainant the monthly rent in the amount of $1,833.24 ($1,833.24 plus 0% rent increase), not $2,101.01 ($2,101.01 plus 0% rent increase) from October 2016 to September 2017. Respondents agree to waive the rent overcharge: $267.77 times 12 months = $3,213.24 and late fees $300 = $3,513.24.

7. Respondents agree to bill Complainant the monthly rent in the amount of $1,855.95 ($1,833.24 plus 1.25% rent increase of $22.91), not $2,127.27 ($2,101.01 plus 1.25% rent increase of $26.26) from October 2017 to September 2018. Respondents agree to waive the rent overcharge: $271.32 times 12 months to September 1, 2018 = $3,255.84 and late fees $600 = $3,855.84.

8. For the period from October 1, 2018 to September 30, 2019, Respondents agree to calculate Complainant's monthly rent based on the previous calendar year monthly amount of $1,855.95.

I need time to workout the calculations but I must go to work now and will send another email tonight when I get home. This is to let you know where I stand.

Carol Commissiong

[Quoted text hidden]

UNITED STATES OF AMERICA

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

OFFICE OF FAIR HOUSING AND EQUAL OPPORTUNITY



CONCILIATION AGREEMENT

BETWEEN

THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

AND

CAROL D. COMMISSIONG

AND

DAVID B. HIRSCHHORN;
ISLAND HOUSE TENANTS CORP.;
IH PRESERVATION PARTNERS LLC;
MARK GREENBERG REAL ESTATE CO. LLC.;
RICHELLE NEUFVILLE — PROPERTY MANAGER;
ALICIA PAIS — ASSISTANT PROPERTY MANAGER;
STEVEN GREENBAUM — DIRECTOR PROPERTY MANAGER;
TAJ JACKSON — CONTROLLER;
KIM CLARK — ACCOUNTANT;
MARK ZELTSER — SUPERINTENDENT

Title VIII No: 02-18-9387-8

---

I.   **PARTIES AND SUBJECT PROPERTY**

This Conciliation Agreement (Agreement) is entered into by the United States Department of Housing and Urban Development (Department); Carol D. Commissiong (Complainant); David B. Hirschhorn, Island House Tenants Corp., IH Preservation Partners LLC., Mark Greenberg Real Estate Co. LLC., Richelle Neufville — Property Manager, Alicia Pais — Assistant Property Manager, Steven Greenbaum — Director Property Manager, Taj Jackson — Controller, Kim Clark — Accountant and Mark Zeltser — Superintendent (collectively referred to as the Respondents).

The Complainant:

o   Carol D. Commissiong
    555 Main Street, Apt. 1 302
    New York, NY 10044

The Respondents:

o   David B. Hirschhorn
    President of Island House Tenants Corp. and Manager of IH Preservation Partners LLC.
    545 Main Street
    New York, NY 10044

o   Island House Tenants Corp.
    545 Main Street
    New York, NY 10044

o   IH Preservation Partners LLC.
    545 Main Street
    New York, NY 10044

o   Mark Greenberg Real Estate Co. LLC.
    30-30 Northern Blvd., Suite 400
    Long Island City, NY 11101

o   Richelle Neufville — Property Manager
    Mark Greenberg Real Estate Co. LLC.
    30-30 Northern Blvd., Suite 400
    Long Island City, NY 11101

o   Alicia Pais — Assistant Property Manager

2

Mark Greenberg Real Estate Co. LLC.
30-30 Northern Blvd., Suite 400
Long Island City, NY 11101

o   Steven Greenbaum — Director Property Manager
Mark Greenberg Real Estate Co. LLC.
30-30 Northern Blvd., Suite 400
Long Island City, NY 11101

o   Taj Jackson — Controller
Mark Greenberg Real Estate Co. LLC.
30-30 Northern Blvd., Suite 400
Long Island City, NY 11101

o   Kim Clark — Accountant
Mark Greenberg Real Estate Co. LLC.
30-30 Northern Blvd., Suite 400
Long Island City, NY 11101

o   Mark Zeltser — Superintendent
Mark Greenberg Real Estate Co. LLC.
30-30 Northern Blvd., Suite 400
Long Island City, NY 11101

II.   STATEMENT OF FACTS

Complainant filed a complaint with the Department on February 26, 2018, alleging that she was discriminated against on the basis of racial, national origin, gender and marital status, in violation of the Fair Housing Act (the Act).

Respondents have denied discriminating against Complainant and deny any wrongdoing in this matter.

The parties agree to settle the claims in the underlying action by entering into this Conciliation Agreement. It is understood that this Agreement does not constitute a finding by the Department or an admission by the Respondents.

III.   EFFECTIVE DATE

This Agreement constitutes neither a binding contract under state or federal law, nor a binding agreement pursuant to the Act, unless and until it is approved by the Department through the Region II Director for the Office of Fair Housing and Equal Opportunity or his designee (Director).

This Agreement shall become effective as of the date it is signed by the Director.

3

IV.   GENERAL PROVISIONS

1.   The parties acknowledge that this Agreement is a voluntary and full settlement of the disputed complaint. No party has been coerced, intimidated, threatened or in any way forced to become a party to this Agreement. The parties have read and understand the terms and conditions set forth in this Agreement.

2.   The Respondents acknowledge that they must comply with the Act, as amended in accordance with 42 U.S.C. § 3602 et seq., and that it would be unlawful to retaliate against Complainant because he has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Act.

3.   This Agreement, after it has been approved by the Director, is binding upon the Complainant and Respondents and their employees, heirs, successors and assigns and all others in active concert with them in the operation, management and ownership of Respondents.

4.   This Agreement shall not be offered, used or considered as evidence in any future proceeding of any type against or involving Respondents, except to the extent necessary to enforce the terms of this Agreement.

5.   It is understood that, pursuant to Section 810(b)(4) of the Act, upon approval of this Agreement by the Director, it is a public document.

6.   This Agreement does not in any way limit or restrict the Department's authority to investigate any other complaints involving Respondents made pursuant to the Fair Housing Act, or any other civil rights laws within the Department's jurisdiction.

7.   No amendment to, modification of, or waiver of any provision of this Agreement shall be effective unless: (a) all signatories or their successors to the Agreement agree in writing to the amendment, modification or waiver, (b) the amendment, modification or waiver is in writing; and (c) the amendment, modification, or waiver is approved and signed by the Director.

8.   The parties agree that the execution of this Agreement may be accomplished by separate execution of consents to this Agreement, the executed signature pages to be attached to the body of the Agreement to constitute one document.

9.   The Department shall accept as true and official execution of this Agreement a scanned or faxed copy of the executed signature page(s) contained in Sections VIII - IX of this Agreement.

4

Conciliation Agreement
Carol D. Commissioner v. Mark Greenberg Real Estate Co., L.L.C., et al.
Title VIII No.: 02-18-9387-8

10. Respondents' signatories hereby acknowledge that they have legal and binding authority to execute this Agreement on behalf of the named Respondents in this matter.

11. Complainant hereby forever waives, releases, and covenants not to sue Respondents or the Department with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of HUD Case No.: 02-18-9387-8 which could have been filed in any action or suit arising from said subject matter.

12. Each Respondent named in this matter hereby forever waives, releases, and covenants not to sue the Department, Complainant, their heirs, executors, successors, assigns, agents, employees, or attorneys with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of HUD Title VIII Case No: 02-18-9387-8 which could have been filed in any action or suit arising from said subject matter, except nothing herein shall preclude Respondents from having standing to take public positions, or seek legislative or judicial relief concerning HUD policies or cases of this nature.

V. SETTLEMENT TERMS

A. Relief for the Complainant

As of the effective date of this Agreement:

1. Respondents agree to waive Complainant Carol Commissioning the rent and late fees in the amount of $18,726.11 for the period from October 1, 2012 to February 28, 2019.

2. Respondents agree to bill Complainant the monthly rent in the amount of $1,712.35 (0% rent increase), not $1,887.69, from October 2012 to September 2014. Respondents agree to waive the rent overcharge: $72.6 times 12 months = $871.2, and late fees $100 = $971.2.

3. Respondents agree to bill Complainant the monthly rent in the amount of $1,712.35 (1,712.35 plus 1% rent increase), not $1,906.57 from October 2014 to April 2015. Respondents agree to waive the rent overcharge: $73.33 times 7 months = $513.31 to be re-calculated, and late fees $20 = $523.31.

4. Respondents agree to bill Complainant the monthly rent in the amount of $1,746.76 ($1,729.47 plus 1% rent increase), not $2,000.96 ($1,729.47 no rent increase because Management never ever provided me with an income affidavit, neither did they prove doing so. They tried to do the same crime recently but it came up in court then I received it at my

Conciliation Agreement
Carol D. Commissioner v. Mark Greenberg Real Estate Co., L.L.C., et al.
Title VIII No.: 02-18-9387-8

door, a few days later and the 60 days notice period by law was violated. Furthermore, there have been mail fraud which also includes the mail delivery man (harried) taking bribes from management staffs, proof was sent with my complaint for your reference. It is provided in this document again) from May 2015 to September 2015. Respondents agree to waive the rent overcharge: $167.72 times 3 months = $838.60, plus late fees $150 and retro charge $600.09 = $1,649.29, to be recalculated.

5. Respondents agree to bill Complainant the monthly rent in the amount of $1,746.76 (1,746.76 plus 0% rent increase), not $2,000.96 from October 2015 to April 2016 and not $2,101.01 ($1,746.76 plus 0% rent increase ) from May 2016 to September 2016. Respondents agree to waive the rent overcharge: $167.72 times 7 months = $1,174.04, plus $267.77 times 5 months = $1,338.85 and retro charge $700.34 = $3,213.23 to be recalculated.

6. Respondents agree to bill Complainant the monthly rent in the amount of $1,746.76 ($1,746.76 plus 0% rent increase), not $2,101.01 ($1,746.76 plus 0% rent increase) from October 2016 to September 2017. Respondents agree to waive the rent overcharge: $267.77 times 12 months = $3,213.24 and late fees $300 = $3,513.24 to be recalculated.

7. Respondents agree to bill Complainant the monthly rent in the amount of $1,768.59 ($1,746.76 plus 1.25% rent increase of $21.83), not $2,127.27 ($1,768.59 plus 1.25% rent increase of $22.10) from October 2017 to September 2019. Respondents agree to waive the rent overcharge: $271.32 times 12 months to September 1, 2018 = $3,255.84 and late fees $600 = $3,855.84 to be recalculated.

8. For the period from October 1, 2018 to September 30, 2019, Respondents agree to calculate Complainant's monthly rent based on the previous calendar year monthly amount of $1,790.69 net $2,591.18.

B. Relief in the Public Interest

1. Respondents agree to comply with the Fair Housing Act, which assures equal opportunity in housing regardless of race, color, religion, sex, familial status, disability or national origin, and the New York State Human Rights Law which assures equal opportunity in housing regardless of race, color, creed, national origin, sex, disability, familial status, marital status, age, military status and sexual orientation.

Conciliation Agreement
Carol D. Commissiong v. Mark Greenberg Real Estate Co., J.L.C., et al.
Title VIII No.: 02-18-9387-8

## VI. REPORTING AND RECORDKEEPING

Within forty-five (45) days after the execution of this Agreement, Respondents shall provide HUD with the following:

1. The rent ledger showing that Respondents has waived Complainant Carol Commissiong the rent and late fees in the amount of $18,726.11 for the period from October 1, 2012 to February 28, 2019 or the final date all parties sign this agreement.

2. The lease renewal and rent bill showing that Respondents have calculated Complainant's monthly rent based on the previous calendar year monthly amount of $1,790.69 not $2,159.18 for the period from October 1, 2018 to September 30, 2019.

All correspondence shall be sent to:

Joy Golden
FHEO Region II Director
U.S. Department of Housing & Urban Development
26 Federal Plaza, Room 3532
New York, NY 10278
Attn: Tung-Chi Yeh

## VII. CONSEQUENCES OF BREACH

Should the Department have reasonable cause to believe that the Respondents have breached this Agreement, the matter may be referred to the Attorney General of the United States, to commence a civil action in the appropriate U.S. District Court, pursuant to §§ 810(c) and 814(b)(2) of the Act. Pursuant to the orders decisions of the U.S. District Court Judge, attorney's fee may be awarded to the prevailing party.

---

Conciliation Agreement
Carol D. Commissiong v. Mark Greenberg Real Estate Co., J.L.C., et al.
Title VIII No.: 02-18-9387-8

## VIII. SIGNATURES

Carol D. Commissiong _____ Date
Complainant

APPROVAL:

Tung-Chi Yeh _____ Date
Equal Opportunity Specialist
Office of Fair Housing and Equal Opportunity

Jo-Ann Frey _____ Date
NY FHEO Center Director
Office of Fair Housing and Equal Opportunity

Joy Golden _____ Date
FHEO Region II Director
Office of Fair Housing and Equal Opportunity

Conciliation Agreement
Carol D. Commissiong v. Mark Greenberg Real Estate Co., LLC, et al.
Title VIII No.: 02-18-0387-8

IX. SIGNATURES

    David B. Hirschhorn, Island House Tenants Corp., IH Preservation Partners LLC.,
Mark Greenberg Real Estate Co. LLC., Richelle Neufville — Property Manager,
Alicia Puis — Assistant Property Manager, Steven Greenbaum — Director Property
Manager, Taj Jackson — Controller, Kim Clark — Accountant and Mark Zeltser —
Superintendent
Respondents

By:

_____
President of Island House Tenants Corp.                                    Date

_____
President of IH Preservation Partners LLC.                                 Date

_____
President of Mark Greenberg Real Estate Co. LLC.                           Date

APPROVAL.

_____
Tang-Chi Yeh                                                               Date
Equal Opportunity Specialist
Office of Fair Housing and Equal Opportunity

_____
Jo-Ann Frey                                                                Date
NY FHEO Center Director
Office of Fair Housing and Equal Opportunity

_____
Joy Golden                                                                 Date
FHEO Region II Director
Office of Fair Housing and Equal Opportunity

# Carol Commissiong

555 Main Street, Apt. 1302 • New York, NY 10044
carolcommissiong@gmail.com • (646) 279-5988

Tang-Chi Yeh
US Dept. Housing & Urban Development
26 Federal Plaza, Room 3532
New York, NY 10278

January 5, 2019

RE: Commissiong, Carol D. vs. Mark Greenberg Real Estate Co. LLC. et al.
Title VIII No. 02-18-9387-8

Dear Ms. Yeh,

I hope this letter finds you in good spirit. Enclosed please find the amended signed conciliation agreement along with some documents for your reference.

First, I'll like to point out that my current rent shouldn't be any more than $1,650.00 with fair increase according to my income. However, the overbilling started in 2009 when my rent was $1,499.09 and was increased to a whopping $1,712.35 that's $213.26 more each month. I contacted management then, who responded and said the building was going through a major capital improvement (MCI) and that the increase will come back down but as you can see it continued with the new lease which I was coerced, intimidated and threatened to sign or lose my apartment. I renewed my lease on 2/24/12 and it was signed by owner agent on 2/28/12 with 0 zero increase $1,712.35 for the period 3/1/12 to 2/28/13. A copy of the lease renewal agreement for this period and new lease was provided with my original complaint for your reference.

Furthermore, I request that the conciliation agreement must be accompanied with lease renewal with the adjusted rent for the periods: 10/1/16 through 9/30/17, 10/1/17 through 9/30/18 and 10/1/18 through 9/30/19.

The landlord is required by law to provide all Bona Fide Michell Lama Tenants under the Affordability Plan with 60 -90 days lease renewal notice and income affidavit for each year. However, management and landlord have violated this right and continue to do. I am being segregated from other tenants. Therefore, I am discriminated against with prejudice. I never got the new lease until August 2014 which expired 9/30/14 with a new increase. The 2013 income affidavit states that there would be no increase that period but as you can see I was largely billed an increase. Since the building MCI increase in 2009 of $213.26 monthly I have been struggling to pay my rent because the increases are unfair and aren't according to my income.

The price adjustment will start with the new lease period 10/1/12 which violates my lease renewal with an unfair increase of 6%. Please note that my rent price adjustment $1,768.59 isn't that much of a difference than HUD's $1,855.95. That's $87.36 less each month with final year at $1,795.11.  Management unfair rate of $2,159.18 is pure fraud. Please see copy of new lease

cover sheet and **lease renewal signed by both parties for the period 3/1/12 through 2/28/13 which is legal and binding. (exhibit #1)**

Furthermore, the discrimination and abuse of authority continues even though they are currently being investigated by HUD, I can't imagine what they'll do next once this case is finalized. First, management failed to give me an income affidavit 2017 at time issued to other residents and had no intention of giving one but when I point it out in court I received it at my door late, violating the minimum of 60 days notice. Second, management claimed they have not received it, see reference letter received at my door. As you can see my notarized 2017 income affidavit 11/06/18, postal receipt 11/08/18 and postal tracking printout showing that it was delivered on 11/13/18 just two days before the deadline of 11/15/18. **(exhibit #2)**

This is management and landlord's tactics to add another unfair price increase in April 2019 with retro-active overbilling for the previous months dating back to October 1, 2018. Then I wouldn't be able to file a court case seeking justice because their attorney would argue that I already tried that in court. This is what was done for 2014 income affidavit which they sent back and claimed they never got it but the evidence proved otherwise.

As you can see notarized 2014 income affidavit 12/21/15 and the postal receipt 12/30/15 and returned envelope with same postal date 12/30/15 and matching tracking numbers **7014 0150 0000 4137 8485** and was delivered on 1/2/16 before the deadline of 1/04/16. I got it back in the mail dated 01/27/16 on envelope a month after it was mailed. Mail in NY takes just 1 day and it's from the Roosevelt Island post office; just 1 block from my home and management & landlord's office. Also, take note of the address: 545 Main Street NY NY 10044 where rent and all correspondent mails are sent. Management and landlord staffs and **mailman Rafael** both engaged in mail fraud. Under no circumstances it should have returned back. See **(exhibit #3)**

On October 24, 2018, I paid $2,000.00 in rent but management claimed they didn't receive it. For your reference please see copy of money receipt, postal receipts and certificate of mailing as proof of payment. **(exhibit #4)**

In addition, see copy of letter dated 9/20/18 and envelope postal marked 9/21/18 with lease renewal for the period 10/01/18 through 9/30/19 unfair monthly rent amount of $2,159.18 and the 2017 income affidavit notice. As you can clearly so my rights were violated again by not giving me 60 days advance notice. The law was set for both parties, not one sided. **(exhibit #5)**

Thank you for your time and consideration. I look forward to your response and the final outcome of this case.

Regards,

Carol Commissiong

Carol Commissiong
Enclosure: Agreement with supporting documents

10/10/2019     Gmail - Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.

Case 1:19-cv-08390-VSB   Document 3   Filed 10/10/19   Page 96 of 110

 Gmail         **Carol Commissiong <carolcommissiong@gmail.com>**

---

## Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.

2 messages

---

**Yeh, Tangchi** <Tangchi.Yeh@hud.gov>               Fri, Feb 15, 2019 at 12:15 PM
To: "Jacqueline L. Aiello" <jaiello@boydlawgroup.com>, Osman Dennis <odennis@afdny.com>
Cc: Carol Commissiong <carolcommissiong@gmail.com>


Dear Jacqueline L. Aiello, Esq. and Osman Dennis, Esq.:


Subject:

Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC., et al.

Title VIII No: 02-18-9387-8


According to Section 810(b)(4) of the Fair Housing Act, during the period beginning with the filing of such complaint and ending with the filing of a charge or a dismissal, our office, shall to the extent feasible, engage in conciliation with respect to such complaint. Therefore, we are always interested in pursuing conciliation with all parties involved to settle the complaint.


Complainant may, not must, propose its conciliation terms for me to convey to Respondents. Complainant and Respondents may choose not to engage in conciliation at all. Respondents may accept, counter-offer or reject Complainant's proposed conciliation terms. If Respondents reject Complainant's conciliation terms, the conciliation will fail.


On March 12, 2018, Complainant advised me that she was not interested in a conciliation term and she doubted that the other party would be."


On October 2, 2018, Complainant advised me that she would like to come to some conciliation agreement. I conveyed Complainant's October 31, 2018 conciliation terms to you.


On January 8, 2019, Dennis Osman, Esq. advised the Department that IH Preservation Partners, LLC declined to engage in further negotiations at this time.


On January 28, 2019, the day when the U.S. Government reopened after a shutdown/furlough of 35 days, our office received Complainant's proposed conciliation terms on January 5, 2019 by mail as attached in PDF in this email.


Please advise the Department whether Respondents are interested to engage in conciliation discussion, and whether Respondents would accept, counter-offer or reject Complainant's January 5, 2019 proposed conciliation terms before February 28, 2019.


If you have any questions regarding the conciliation process, please do not hesitate to contact me at 212-542-7522. Thank you.

10/10/2019                    Gmail - Commissiong, Carol D. v. Mark Greenberg Real Estate Co. LLC. et al.

Case 1:19-cv-08390-VSB   Document 3   Filed 10/10/19   Page 97 of 110

Tang-Chi Yeh

Equal Opportunity Specialist

U.S. Department of Housing & Urban Development

Office of Fair Housing and Equal Opportunity

New York Regional Office

26 Federal Plaza, Room 3532

New York, NY 10278-0068

Phone:  (212) 542-7522

Fax:     (212) 264-9829

Email: Tangchi.Yeh@hud.gov

---

📎 **Commissiong Jan 5 2019 conciliation terms.pdf**
548K

---

**Carol Commissiong** <carolcommissiong@gmail.com>                    Mon, Feb 18, 2019 at 12:45 PM
To: "Yeh, Tangchi" <Tangchi.Yeh@hud.gov>
Cc: "Jacqueline L. Aiello" <jaiello@boydlawgroup.com>, Osman Dennis <odennis@afdny.com>

Thank you for the update.

Regards,

Carol Commissiong
[Quoted text hidden]



MARK GREENBERG
REAL ESTATE CO. LLC

December 31, 2018


Carol Commissiong
555 Main Street
Apartment 1302
New York, NY 10044

Dear Tenant:

Please be advised that we have processed the *2017 Income Affidavit* that you submitted. Based on the information provided, the following is your income adjustment as of 10/1/18:

| | |
|---|---|
| Monthly Rent as of **9/30/18** | $2,127.27 |
| Monthly RGB Rent Increase and Income Adjustment as of **10/1/18** | $   31.91 (1.5%) |
| New Monthly Rent Effective as of **10/1/18** | $2,159.18 |

Please note that the Income Adjustment (if any) for the period October 1, 2018 – December 31, 2018 is being billed to you retroactively and the amount will be reflected on your January 2019 rent bill along with your new rent listed above.
As a reminder, the RGB increase of 1.5% was already billed in October 2018.

Should you have any questions regarding this matter, please feel free to contact our office at (212) 755-3012.

Sincerely,

Mark Greenberg Real Estate Co. LLC.

545 Main Street, New York, NY 10044 ▪ Phone 212-755-3012 ▪ Fax 212-755-3160 ▪ www.mgre.com



MARK GREENBERG
REAL ESTATE CO. LLC

September 20, 2018

By Hand Delivery
And Certified Mail, Return Receipt Requested

Ms. Carol Commissiong
Apartment 1302
555 Main Street
New York, New York 10044

          **Re:**    **Renewal Lease Offer**

Dear Ms. Commissiong:

      In view of the various legal matters involving your occupancy, the lease renewal for your apartment had been held in abeyance.

      Enclosed is a renewal lease for your apartment. To renew your lease, it is necessary to sign the enclosed renewal lease offer without modification and return the signed renewal lease to the management office within 30 days of the date of your receipt of this letter.

                  Very truly yours,

                  MGRE

545 Main Street, New York, NY  10044 ▪ Phone 212-755-3012 ▪ Fax 212-755-3160 ▪ www.mgre.com

# RENEWAL NOTICE
## ISLAND HOUSE NEW LEASE RENEWAL FORM

**THIS IS THE RENEWAL NOTICE AND LEASE RENEWAL FORM PURSUANT TO RIDER PARAGRPAH 5 OF THE NEW LEASE UNDER THE ISLAND HOUSE AFFORDABILITY PLAN.**

OWNER:                    IH PRESERVATION PARTNERS, LLC

OWNER'S ADDRESS:          EXECUTIVE/MANAGEMENT OFFICES
                          545 MAIN STREET, NEW YORK, NY 10044

TENANT NAME:              <u>CAROL COMMISSIONG</u>

TENANT ADDRESS:           APARTMENT 1302
                          555 MAIN STREET
                          NEW YORK, NY 10044

This Renewal Lease is offered pursuant and subject to the terms and conditions of the New Lease and is offered only to Qualified Primary Residents entitled to a renewal lease as explained in Paragraph 5 of the New Lease. When signed by a Tenant who is a Qualified Primary Resident and accepted by the Owner, the New Lease will be renewed for the Renewal Term listed below and all of the terms, covenants and conditions of the New Lease shall continue in full force and effect for the duration of the Renewal Term, except as modified hereby.

---

### OFFER FOR TENANT TO RENEW

1. The owner hereby notifies you that your lease will expire on <u>09/30/2018.</u>

2. The Renewal Lease will commence on <u>10/01/2018</u> and expire on <u>09/30/2019</u> ("Renewal Term")

3. The Base Rent will increase by <u>1.5%</u> for the Renewal Term.

4. The monthly Base Rent during the Renewal Term will be <u>$2,159.18</u> per month. **(EXCLUDES APPLICABLE INCOME ADJUSTMENT)**

5. The Income Adjustment amount is $_____. If the amount of the Income Adjustment is unknown (left blank) at the commencement of the Renewal Term, Tenant will be given a separate written notice setting forth the applicable Income Adjustment, if any, when same is determined through the Income Validation Process and such amount will be billed retroactively from the beginning of the Renewal Term.

6. Your current Security Deposit is <u>$2,000.96.</u>

7. The additional amount of Security Deposit required with this Renewal Lease is: <u>$158.22.</u>

---

Tenant: Check the applicable response below. Date and sign your response and return this Renewal Lease form to the Owner in person or by mail within 30 days of the date this notice was served upon you by the Owner.

---

### TENANT'S RESPONSE TO OWNER

_____    I (We) the undersigned tenant(s), agree to enter into a 1 year lease.

_____    I (We) will not renew my (our) lease and I (we) intend to vacate the apartment on or before the expiration date of the present lease agreement indicated above.

---

AGREED AND ACCEPTED:

www.mgre.com

1981 Marcus Avenue Suite C131  Lake Success, NY 11042
Phone (516) 944-5000   Toll free 1-866-470-MGRE
Fax (516) 801-6153

4 Park Avenue, 3rd Floor, New York, NY 10016
Phone (212) 888-8811  Fax (212) 447-1667

**MARK GREENBERG
REAL ESTATE CO. LLC**

June 30, 2015

To All Residents of Island House

Dear Residents:

As you know, our firm has been retained to be the new Managing Agent of Island House effective July 1, 2015. Mark Greenberg Real Estate Co., LLC (MGRE) has been managing premier properties in the New York Metropolitan area for over thirty years. Several weeks ago we met with the Island House Tenant Association to introduce ourselves and answer questions.  With the effective date of our management takeover now approaching, we are reaching out to all residents to provide you with important information.

Adrian Coyoc is the new senior property manager. Adrian assumed the role of Island House property manager several weeks ago and is now familiar with the Island House operations.  Adrian is an experienced property manager who has managed several New York City properties.  Adrian's email is Adrian@mgre.com.   Alicia Pais has joined MGRE and will now be the assistant property manager.   Alicia's new email address is Alicia@mgre.com.   Cindy Febus has also joined MGRE and her new email address will be Cindy@mgre.com.   You should begin using these new email addresses on Wednesday, July 1st.

The on site management office will continue to be at 545 Main Street and the phone number will remain as 212-755-3012.  Adrian, Alica and Cindy can still be reached at this site office number Monday through Friday 9:00 am – 5:00 pm.

The main office for MGRE is located at 1981 Marcus Avenue Suite C131, Lake Success, NY 11042.  You can reach us by phone at 516-944-5000 or toll free at 1-866-470-MGRE.

Kim Clark will be the accounts receivable bookkeeper for Island House.  You should contact Kim for all matters involving rent payments and lease questions.  Kim can be reached by phone at the Lake Success office or by email at kclark@mgre.com.

Prior to the end of each month you will receive your rent bill and a return envelope. **EFFECTIVE JULY 1, 2015 All rent payments should be made payable to "IH PRESERVATION PARTNERS LLC".** You may continue to drop your rent payment in the Lobby Mailbox, bring it to the site management office or mail it to our main office in Lake Success.

**A Division of The Charles H. Greenthal Group of Companies**

www.greenthal.com

Please note that since we are in transition, your July rent bill will not include arrears or repair charges, if any. Those charges, if any, will appear on your August rent bill.

In case of an emergency continue to call the doorman station at 212-751-4499.

In the near future we will set up a time for residents to meet Adrian and the principals of MGRE. The date and time of the meeting will follow.

The entire MGRE organization looks forward to providing many years of professional service to Island House.

Very truly yours,

Steven Greenbaum
Director of Property Management

SG:vl

Please note that since we are in transition, your July rent bill will not include arrears or repair charges, if any. Those charges, if any, will appear on your August rent bill.

In case of an emergency continue to call the doorman station at 212-751-4499.

In the near future we will set up a time for residents to meet Adrian and the principals of MGRE. The date and time of the meeting will follow.

The entire MGRE organization looks forward to providing many years of professional service to Island House.

Very truly yours,

Steven Greenbaum
Director of Property Management

SG:vl



**MARK GREENBERG
REAL ESTATE CO. LLC**

www.mgre.com

1981 Marcus Avenue Suite C131  Lake Success, NY 11042
Phone (516) 944-5000  Toll free 1-866-470-MGRE
Fax (516) 801-6153

4 Park Avenue, 3rd Floor, New York, NY 10016
Phone (212) 888-8811  Fax (212) 447-1667

January 20, 2016

To All Residents Of
Island House & Westview

Dear Residents:

Mark Greenberg Real Estate Co. is pleased to announce that effective immediately Richelle Neufville is the new on site Senior Property Manager at the Island House and Westview.

Ms. Neufville has managed many large prestigious residential properties throughout New York City. She has extensive experience and will bring a wealth of knowledge and expertise to Island House and Westview.

Richelle will be working alongside Alicia Pais and Cindy Febus. She may be reached by email at Richelle@mgre.com or by phone at the on site management office at 212-755-3012.

Very truly yours,

Steven Greenbaum
Director of Property Management

SG:vl



MARK GREENBERG
REAL ESTATE CO. LLC

November 2, 2017

Dear Island House Residents:

It is with mixed emotions that we write to you to advise that Mark Zeltser has decided to retire as the Island House Superintendent. We are all of course saddened to see Mark leave after 19 years of unqualified attention and dedication to Island House and its residents. We are, however, delighted that Mark will now be spending more time with his family and enjoying life. To recognize and show Mark our appreciation for all he has done, and to give you shareholders and tenants the opportunity to do the same, the Apartment Corporation will host a simple event at a date to be announced shortly.

As many of you know, Mark is also a Shareholder and will continue to reside at Island House. We ask that you respect Mark's privacy by not seeking Mark out for building questions or policies. Please address all of these questions to Management.

We are delighted to advise you that Shareholders and Tenants will be in good hands, as our long time and well trained Assistant Superintendent, Joshua H. Singh, will be taking over for Mark as Acting Superintendent. Joshua has been filling in for Mark on vacations and other away periods, and is experienced in all operations of Island House and our building. Please join us in welcoming Joshua to this new position.

Very truly yours,

*Steven Greenbaum*

Steven Greenbaum
Director of Property Management

545 Main Street, New York, NY, 10044 • Phone 212 755 2012 • Fax 212 755 3460 •



**U.S. Department of Housing and Urban Development**
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/

**REGULAR AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Carol D. Commissiong
555 Main Street, Apt. 1302                              **JUN 25 2019**
New York, NY 10044

Dear Ms. Commissiong:

   SUBJECT: Request for the Returning of Original Lease Renewal Document
   HUD Case Number: 02-18-9387-8
   HUD Case Name: Commissiong, Carol D. v. Mark Greenberg Real Estate Co.
                  LLC., et al.

   Our Office has received your June 12, 2019 request for the return of your
original lease renewal document sent to our Office by mail on January 5, 2019.

   Your original lease renewal document is enclosed as requested.

   If you have any questions or require additional information, please contact Ms.
Tang-Chi Yeh at (212) 542-7522 or by email at Tangchi.Yeh@hud.gov.

                                   Sincerely,

                                   Jay Golden
                                   Region II Director
                                   Office of Fair Housing and
                                   and Equal Opportunity

Enclosure

Carol Commissiong
555 Main St., Apt. # 1302
New York NY 10044
carolcommissiong@gmail.com

June 12, 2019

Tang-Chi Yeh
US Dept. Housing & Urban Development
26 Federal Plaza, Room 3532
New York, NY 10278

RE: Mark Greenberg Real Estate Co. Complaint Decision case # 02-18-9387-8

Dear Ms. Yeh,

I am in receipt of Jay Golden decision of my complaint against my landlord and management
MGRE Co., received in the mail on Wednesday 5/23/19 and post marked 5/20/19. I am
requesting that my file remains private and not become public record or used in any court case.

In my last letter response mailed January 5, 2019. I sent an original lease renewal document for
the period October 1, 2018 through September 30, 2019 and would like to have it returned to me
at my address in the mail as soon as possible. This letter is addressed to you as directed by Jay
Golden in his response letter.

I provided a lot of evidence to make my case but Jay Golden and whoever else involved chose to
turn a blind eye to all evidence provided in favor of landlord and management who had an
attorney to their advantage. I couldn't afford an attorney so I put my faith and trust into HUD in
hopes that they would enforce the Fair Housing Act of 1968 but I was wrong, the system is very
broken. However, I won't ever give up fighting for my Rights!

I find the decision one sided and a lot of lies have been told and facts were not checked. The
landlord and his staffs have been known to bride government workers including the mailman
which is a federal offense and I hope that wasn't the case here but sure looks like it.

I look forward to HUD returning my lease renewal document with a confirmation that my case is
seal and won't become a public record.

Regards,

Carol Commissiong

Carol Commissiong

closure or a no cause determination, or charged as a result of a reasonable cause determination. Non-party requesters must pay any FOIA applicable fees for the search, review, and production of documents.

The FOIA process includes several exemptions regarding the disclosure of information or records. It requires that certain information or records be exempt from disclosure when such disclosure would implicate specific concerns enumerated in the statute, such as an unwarranted invasion of personal privacy or harm to the Department's deliberative process. Information specifically exempted by another statute, such as any statements made or actions taken in the course of conciliatory discussions, are also exempt.

In general, portions of the investigative file, including the complaint form and the FIR, may be redacted or withheld pursuant to a FOIA exemption found applicable. For instance, personal information such as addresses, telephone numbers, and social security numbers of individuals are always withheld under FOIA's privacy exemptions.

The release of information contained in an investigative file is also subject to the Privacy Act. The Privacy Act, in part, provides that agencies cannot disclose information contained in a "system of records" without the prior consent of the individual to whom the record pertains, subject to certain exceptions, one of which is a disclosure required by the FOIA. As such, the Privacy Act does not serve to protect any information contained in a Fair Housing Act case file that the FOIA requires to be released. However, it does preclude HUD from making a discretionary release of personal information that is otherwise protected by FOIA privacy exemptions.

The Department conducts closed investigations. That is, we do not share the contents of the investigative file with the parties. We request specific data from the parties, collect other relevant data, and conduct interviews with witnesses. However, the parties do not receive the investigative file. At the conclusion of the investigation, the parties may ask for, and receive, a copy of the Final Investigative Report. Moreover, if a party wishes to request a copy of the investigative file, the documents will be provided consistent with the Freedom of Information Act and the Privacy Act.

In summary, while the Department will honor your request regarding nondisclosure of information pertaining the dismissal of your complaint (*i.e.* will take no proactive steps to publicize the decision in this matter), we cannot confirm that your case will be sealed or will not become public record.

Please note that since we are in transition, your July rent bill will not include arrears or repair charges, if any. Those charges, if any, will appear on your August rent bill.

In case of an emergency continue to call the doorman station at 212-751-4499.

In the near future we will set up a time for residents to meet Adrian and the principals of MGRE.  The date and time of the meeting will follow.

The entire MGRE organization looks forward to providing many years of professional service to Island House.

Very truly yours,

Steven Greenbaum
Director of Property Management

SG:vl

Carol Commissiong
555 Main St., Apt. # 1302
New York NY 10044
carolcommissiong@gmail.com

June 12, 2019

Tang-Chi Yeh
US Dept. Housing & Urban Development
26 Federal Plaza, Room 3532
New York, NY 10278

RE: Mark Greenberg Real Estate Co. Complaint Decision case # 02-18-9387-8

Dear Ms. Yeh,

I am in receipt of Jay Golden decision of my complaint against my landlord and management MGRE Co., received in the mail on Wednesday 5/23/19 and post marked 5/20/19. I am requesting that my file remains private and not become public record or used in any court case.

In my last letter response mailed January 5, 2019. I sent an original lease renewal document for the period October 1, 2018 through September 30, 2019 and would like to have it returned to me at my address in the mail as soon as possible. This letter is addressed to you as directed by Jay Golden in his response letter.

I provided a lot of evidence to make my case but Jay Golden and whoever else involved chose to turn a blind eye to all evidence provided in favor of landlord and management who had an attorney to their advantage. I couldn't afford an attorney so I put my faith and trust into HUD in hopes that they would enforce the Fair Housing Act of 1968 but I was wrong, the system is very broken. However, I won't ever give up fighting for my Rights!

I find the decision one sided and a lot of lies have been told and facts were not checked. The landlord and his staffs have been known to bride government workers including the mailman which is a federal offense and I hope that wasn't the case here but sure looks like it.

I look forward to HUD returning my lease renewal document with a confirmation that my case is seal and won't become a public record.

Regards,

Carol Commissiong

Carol Commissiong